# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| DYSON, INC. and DYSON TECHNOLOGY LIMITED, <br><br> *Plaintiffs,* <br><br> v. <br><br> SHARKNINJA, INC., OMACHRON ALPHA INC., and OMACHRON INTELLECTUAL PROPERTY INC., <br><br> *Defendants*. | Case No. 2:24-cv-386-JRG <br><br> **JURY TRIAL DEMANDED** |

**DYSON'S OPPOSITION TO DEFENDANTS' MOTION TO STAY OR DISMISS
<u>PURSUANT TO FIRST-TO-FILE RULE</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction .................................................................................................................. 1 | |
| II. | Factual Background ..................................................................................................... 3 | |
| III. | Legal Standards ........................................................................................................... 7 | |
| IV. | Argument ..................................................................................................................... 8 | |
| | A. | There Is No Risk of Substantial Overlap ................................................... 9 |
| | B. | Dismissing or Staying Risks Wasting Judicial Resources ..................... 12 |
| | C. | No "Critical Parties" Are Missing from This Case ................................. 15 |
| V. | Conclusion ................................................................................................................ 15 |

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Commc'ns Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020)..................................................................................8, 15

*Datamize, Inc. v. Fid. Brokerage Servs., LLC*,
  2004 WL 1683171 (E.D. Tex. Apr. 22, 2004)...........................................................7, 11, 13

*Dyson, Inc. et al. v. SharkNinja, Inc. et al.*,
  Case No. 24-12373 (D. Mass.), Dkt. 1....................................................................6, 13

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
  737 F.3d 704 (Fed. Cir. 2013)..................................................................................6, 10

*Genetech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993)..........................................................................................12

*In re Telebrands Corp.*,
  773 F. App'x 600 (Fed. Cir. 2016) ................................................................................7, 9

*Kokusai Semiconductor Equip. Corp. v. ASM Int'l, N.V.*,
  2019 WL 1281290 (D. Or. Jan. 25, 2019), report and recommendation
  adopted, 2019 WL 1281228 (D. Or. Mar. 20, 2019) ...................................................8

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012).............................................................................1, 7, 14

*School-Link Techs., Inc. v. Applied Resources, Inc.*,
  2006 WL 1064111 (D. Kan. Apr. 20, 2006)..............................................................8

*SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*,
  Case No. 1:23-cv-12372 (D. Mass.) ..........................................................................3, 7

*VCode Holdings, Inc. v. Cognex Corp.*,
  2007 WL 2238054 (E.D. Tex. Aug. 3, 2007) ................................................................ *passim*

**Rules**

Fed. R Civ. Proc. 12(b)(7) ...............................................................................................9, 15

I. **INTRODUCTION**

SO's[1] Motion turns the first-to-file rule on its head. Six of the nine patents-in-suit in this case are vacuum configuration patents that were indisputably first asserted in this forum, and under SO's own logic, should properly remain in this District. Dismissing or putting those six patents on hold runs counter to the entire purpose of the first-to-file rule. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). Yet SO argues that because the three other patents-in-suit directed to cleaner heads were first-filed *by Dyson* as counterclaims to a case against Dyson in Massachusetts, they should operate as an anchor to sink this entire case by stay or dismissal, pending resolution of the cleaner head patent infringement claims in Massachusetts. *See, e.g.*, Dkt. 32 at 1 (moving to stay or dismiss "this case"). SO argues that this Court should defer to the district of Massachusetts as the court in which the "controversy" was first joined, Dkt. 32 at 1, but it cannot establish that this case substantially overlaps with the Massachusetts case because even when two patents "involve the same general field of technology," there is not a substantial risk of overlap between cases when the patents have "completely different claims and specifications." *VCode Holdings, Inc. v. Cognex Corp.*, 2007 WL 2238054, at *2 (E.D. Tex. Aug. 3, 2007). The six patents first filed here have "completely different claims and specifications" than the patents that were filed initially in Massachusetts, and thus there is not a "substantial risk of overlap" between this case and the Massachusetts case that would warrant transfer of this whole case to Massachusetts (as SO argues in its contemporaneous motion to dismiss or transfer, Dkt. 31), or putting this case on hold.

Even as to the three cleaner head patents in this case that Dyson initially filed as counterclaims in Massachusetts, SO cannot make the required showing. The overlap between the

---

[1] Defendants SharkNinja, Inc.; Omachron Alpha Inc.; and Omachron Intellectual Property Inc.

1

cases due to the cleaner head patents is temporary. SO asked the Massachusetts court to sever Dyson's counterclaims over those three patents, arguing that the SharkNinja patents asserted in Massachusetts (vacuum configuration patents, like the six vacuum configuration patents first filed here) had "***absolutely nothing in common***" with the three cleaner head patents.[2] Dkt 32-2 at 5. The Massachusetts court agreed, stating Dyson's cleaner head patents "do not invite the Court to resolve common questions of fact or law" between those claims and the SharkNinja vacuum configuration patents, and severed the claims. Dkt. 32-3 at 2. Once the Massachusetts court severed those claims, Dyson has consistently argued that those claims should proceed in this case only. *See, e.g.,* Ex. 1 at 136:23-137:4, 138:5-139:2, 143:24-145:1. This is simple judicial economy. Two cases—one in Massachusetts with SharkNinja's patents and one in Texas with Dyson's—makes more sense than the three cases that would result if the three severed patents proceeded in a new, third case in Massachusetts.

While SO purports to care about "duplicative litigation" and "waste of judicial and party resources" (Dkt. 32 at 1), the relief it requests in its Motion belies that concern. Dyson has told SO and the Massachusetts court that it intends to try its patents in this Court, but SO nonetheless has moved to stay, dismiss, or transfer this whole action to Massachusetts. Dkt. 31, 32. Analogous briefing does not exist there, and granting SO the relief it seeks would result in needless duplication, because the parties would just end up filing similar motions in Massachusetts. Further, the parties have already expended considerable resources litigating Dyson's patent infringement claims as to all nine patents-in-suit in this Court. In accordance with the scheduling order, Dyson served its infringement contentions on September 4, 2024, started document production, and the Court held its scheduling conference with the parties on

---

[2] All emphasis added unless otherwise noted.

2

September 18, 2024. No such events have occurred in the Massachusetts cases involving Dyson's patents, and a schedule is proposed but not yet set in that case. Staying or dismissing this case would waste the efforts already expended, with no commensurate benefit. Indeed, the Massachusetts court commented that the "practical solution about where" Dyson's patent claims should be is "all [] together someplace" and that "Texas is a nice place. You should all go there." Ex. 1 at 139:19-21, 145:7. And as Dyson told the Massachusetts court, "from an efficiency standpoint," the parties should complete briefing on this issue in Texas, and the Texas Court should "decide whether these patents should stay in Texas or not. And then at the end of the day, either way, we have those nine patents in one case and only one case." *Id.* at 138:5-139:2.

SO told the Massachsetts court that Dyson "could have included its infringement claims in its recently filed case in the Eastern District of Texas," Dkt. 32-2 at 11, and should be held to its word. Due to SO's judicial gamesmanship, the procedural posture of these cases is temporarily complicated, but the way these cases should proceed is not: Dyson's patent infringement claims should proceed in this forum, while SO's proceed in Massachusetts. This motion is in reality another facet of SO's effort to avoid answering in this District for its infringement in this District. SO's Motion seeking to prevent Dyson from proceeding on its patent infringement claims here should be denied.

## II.   FACTUAL BACKGROUND

***Dyson EDTex Case.*** On May 24, 2024, Dyson selected this forum for this case asserting five patents directed to vacuum configurations against SO for the first time. Dkt. 1.

***Shark DMass Case.*** Two weeks earlier, Dyson had asserted counterclaims for infringement of three patents directed to cleaner heads in a Massachusetts case, *SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*, Case No. 1:23-cv-12372 (D. Mass.) ("*Shark DMass*"),

3

against SharkNinja.³ *Shark DMass*, Dkt. 123 (May 10, 2024). SharkNinja responded by moving to sever those counterclaims, arguing that Dyson's suits in the District of Massachusetts and "in the Eastern District of Texas asserting different vacuum patents on the same accused products … has guaranteed duplicative proceedings," and having two separate cases accusing the same products is a "waste of resources." Dkt. 32-2 at 1, 7. SharkNinja further claimed:

- Dyson's cleaner head patent infringement claims are "unrelated" to the SharkNinja patent infringement claims pending in Massachusetts and the parties' infringement claims have "absolutely nothing in common" (Dkt. 32-2 at 5-6);

- "Dyson's infringement counterclaims will not involve common questions of fact" as the pending claims in Massachusetts (*Id.* at 7);

- "the subject matter of [Dyson's and SharkNinja's] patents and the accused products are distinct" (*Id.*);

- "the issues to be decided in connection with each set of patents are distinct" (*Id.*);

- "there will likely be different witnesses required for Dyson's" cleaner head patents compared to the pending claims in Massachusetts. (*Id.* at 13).

SharkNinja also stated that while Dyson's cleaner head patents "generally relate to vacuum cleaners," they had "absolutely nothing in common" with patents that "claim the configuration of hand vacuum cleaners" because Dyson's cleaner head patents claim "an attachment for use with a vacuum cleaner (*i.e.*, a cleaning head)." Dkt 32-2 at 5. Moreover, SO said that Dyson "***could have included its infringement claims in its recently filed case in the Eastern District of Texas***, which includes all of the SharkNinja products Dyson accuses here." Dkt. 32-2 at 11.

The Massachusetts court agreed that Dyson's cleaner head patent infringement claims "do not invite the Court to resolve common questions of fact or law" between those claims and

---

³ "SharkNinja" is defined as "Plaintiffs and Counterclaim-[Defendants] SharkNinja Operating LLC, SharkNinja Sales Company, Omachron Alpha Inc., Omachron Intellectual Property Inc., and SharkNinja, Inc." *Shark DMass*, Dkt. 128 at 1–2 (June 10, 2024).

4

the SharkNinja patents pending in Massachusetts, granted SharkNinja's motion to sever, and directed Dyson to "open a new case." *Shark DMass*, Dkt. 168 (Aug. 15, 2024)).

Based on SharkNinja's arguments to the Massachusetts court that it would be a "waste of resources" to have two cases accusing the same products, Dkt. 32-2 at 1, 7, and that Dyson "could have included its infringement claims in its recently filed case in the Eastern District of Texas, *id.* at 11, Dyson informed SharkNinja on August 19, 2024, that it would amend its complaint in this case to add the three severed cleaner head patents.[4] Ex. 2. Dyson amended its complaint in this case on August 22, 2024, to assert four patents—the three severed cleaner head patents and a sixth vacuum configuration patent, U.S. Patent No. 10,433,687 ("the '687 Patent"), that had not previously been asserted against SO, Dkt. 26—and informed the Massachusetts court that it had amended its complaint here, *Shark DMass*, Dkt. 170. Thus, this case now has the six vacuum configuration patents, first-filed in this Court, and the three cleaner head patents that the Massachusetts court severed.

On the same day Dyson told SharkNinja it would add the three severed patents to this case, SharkNinja unexpectedly filed an answer and declaratory judgment counter-counterclaims on the three just-severed Dyson cleaner head patents ***in the very same case from which SharkNinja had just successfully obtained severance***. *Shark DMass*, Dkt. 169. Believing SharkNinja's injection of these patents back into that case to be improper and inoperative, Dyson

---

[4] SO's effort to malign Dyson as seeking to "weigh anchor and set sail for [] more favorable waters," Dkt. 32 at 1, could not be more misplaced. Dyson did, of course, initially file the cleaner head patents as counterclaims in Massachusetts, believing and arguing there was common factual overlap relating to products that would be efficient. Dyson lost, and respects the Massachusetts court's decision. Having lost, the question then became: is it more efficient to proceed with all Dyson patents in Texas, or have six in Texas and three in another new case Massachusetts. For many reasons, the clear answer is all in this Texas case, and SO's positions in its motion to sever in the Massachusetts case were in accord.

5

moved to strike SharkNinja's pleading. *See* Dkt. 32-3. The Massachusetts court granted that motion on September 24, 2024, and thus the three cleaner head patents are not currently pending in that case. *Shark DMass*, Dkt. 197.

***Dyson DMass Case.*** On September 13, 2024, the Massachusetts court noted that Dyson's "infringement counterclaims are not mooted by severance and remain pending before the Court," and instructed Dyson to open a new related case, after which time "the Court will be properly positioned to rule on any motion to resolve the claims that may follow." *Shark DMass*, Dkt. 189. Dyson did so, filing a new complaint in Massachusetts asserting the three cleaner head patents. *Dyson, Inc. et al. v. SharkNinja, Inc. et al.*, Case No. 24-12373 (D. Mass.) ("*Dyson DMass*"), Dkt. 1. Of course, Dyson has no intention of proceeding on these patents in two courts, and has, as noted, consistently argued since severance of those claims from the Shark DMass case, that they should proceed in this case in this Court. *See, e.g.*, Ex. 1 at 136:23-137:4.

***Shark DMass Retaliatory DJ Case.*** On August 19, 2024, SO filed a mirror-image, retaliatory declaratory judgment suit regarding the same five vacuum configuration patents Dyson originally asserted here, and amended its complaint on August 26, 2024, to add the '687 patent. *SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*, No. 1:24-cv-12130 (D. Mass.) ("*Shark DMass Retaliatory DJ*"), Dkt. 1, 6. Dyson has not yet answered. *Shark DMass Retaliatory DJ*, Dkt. 23, 24. This retaliatory, second-filed case deserves no consideration in connection with SO's motion. *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

As noted, of the pending cases involving Dyson patents, only this case has an operative schedule (Dkt. 17)—under which Dyson has already served its infringement contentions and begun its production of documents—and dates set for a *Markman* hearing (September 18, 2025)

6

and jury selection (March 2, 2026). As counsel for Dyson told the Massachusetts court at the recent *Markman* hearing in *Shark DMass*, Dyson moved the severed claims to this case so "we have two cases going, one[, SharkNinja's, in Massachusetts,] and one[, Dyson's, in this District]." Ex. 1 at 136:23-137:4. "[F]rom an efficiency standpoint," because the parties are already briefing the issue of where Dyson's patents should be heard in Texas, the Texas Court should "decide whether these patents should stay in Texas or not. And then at the end of the day, either way, we have those nine patents in one case and only one case." *Id.* at 138:5-139:2; *see also id.* at 143:24-145:1.

### III. LEGAL STANDARDS

"The "first-to-file" rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). The first-to-file rule applies when "two actions involve closely related questions or subject matter or the core issues substantially overlap." *VCode Holdings, Inc. v. Cognex Corp.*, 2007 WL 2238054, at *1 (E.D. Tex. Aug. 3, 2007). Where the overlap is less than "complete or nearly complete," "the second district court has considerably more discretion." *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016).

Importantly, there is no risk of substantial overlap between two patent cases involving "different defendants, different patent claims, different claim scopes, different accused products, and a different industry." *Datamize, Inc. v. Fid. Brokerage Servs., LLC*, 2004 WL 1683171, at *7 (E.D. Tex. Apr. 22, 2004). Even when two patents "involve the same general field of technology," there is not a substantial risk of overlap between cases when the patents have "completely different claims and specifications." *VCode Holdings*, 2007 WL 2238054, at *2. Similarly, even when the two cases involve the same accused product, the issues are not

7

substantially similar where "[t]he actions involve different patents and different technologies" for reasons including that "resolving the dispute will require examination of different claim terms [and] different claim elements." *Kokusai Semiconductor Equip. Corp. v. ASM Int'l, N.V.*, 2019 WL 1281290, at *6 (D. Or. Jan. 25, 2019), report and recommendation adopted, 2019 WL 1281228 (D. Or. Mar. 20, 2019).

While the general rule favors the first-filed action, "equitable exceptions" are proper where judicial and litigant economy is better served by proceeding in a different forum. *See Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362–63 (Fed. Cir. 2020). Exercising this equitable discretion, courts in this District have conferred with judges from other districts when deciding where it would be most efficient for specific patent claims to proceed. *See VCode Holdings*, 2007 WL 2238054, at *2. Courts decline to apply the first-to-file rule when it would be more efficient to proceed in a separate forum. *See, e.g., Commc'ns Test Design*, 952 F.3d at 1362; *VCode Holdings*, 2007 WL 2238054, at *2; *School-Link Techs., Inc. v. Applied Resources, Inc.*, 2006 WL 1064111, at *4 (D. Kan. Apr. 20, 2006). For example, in *VCode Holdings*, the court held "judicial efficiency would not be accomplished by transferring this case [under the first-to-file rule]" to a forum that had already held it was "too late" to assert the claims as counterclaims. 2007 WL 2238054 at *1. In *School-Link,* the Court held the first-to-file rule no longer applied when the first-filed Court declined to hear the claims. 2006 WL 10064111 at *4.

IV.   **ARGUMENT**

SO's motion should be denied. There is not a likelihood of substantial overlap between this case and the Massachusetts case, and SO's arguments fail to grapple with the full scope of this case. Further, staying or dismissing the case now would be a waste of judicial resources, and contrary to SO's argument, there are no "critical parties" missing from this case. All patents currently asserted in this jurisdiction should move forward in this case, and SO's motion to stay

8

or dismiss this case should be denied.

### A. There Is No Risk of Substantial Overlap

The fundamental premise of SO's argument is that Dyson's counterclaim as to the three cleaner head patents in *Shark DMass* is the "first-filed" case as compared to this Texas case, and thus everything here should be any or all of dismissed, transferred, or stayed in favor of that case. Dkt. 31, 32. Even putting aside that the overlap of three cleaner head patents is a temporary procedural artifact, and that Dyson has made clear that it does not seek to proceed with those claims in two venues, SO's first-to-file arguments simply do not fit this scenario or hold water.

First, there is no basis to litigate Dyson's six vacuum configuration patents—2/3 of the patents at issue in this case—in Massachusetts, and SO does not even attempt to argue that there is. Therefore, any overlap between the cases is far from "complete or nearly complete," meaning—even assuming *arguendo* the severed Massachusetts counterclaims on the three cleaner head patents were considered the first-filed—this Court has "considerably more discretion" to find no substantial overlap. *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016).

Second, even if this Court were to consider the question of whether this whole case substantially overlaps with *Dyson DMass*, by the numbers alone, it does not. Dyson has asserted nine patents here—six vacuum configuration patents, and three cleaner head patents. Dkt. 26. SO does not and cannot dispute that Dyson's six vacuum configuration patents were first filed in this Court, and that the only other case involving these patents is *Shark DMass Retaliatory DJ*,[5] a later-filed declaratory judgment action involving different SharkNinja entities (SharkNinja

---

[5] SharkNinja filed the retaliatory DJ case after Dyson filed this case, and amended it to add the '687 Patent just two business days after Dyson amended its complaint in this case to add that patent. *Shark DMass Retaliatory DJ*, Dkts. 1 (Aug. 19, 2024) and 6 (Aug. 26, 2024).

9

Operating LLC and SharkNinja Sales Company, neither of which are a party to this case). *Shark DMass Retaliatory DJ*, Dkts. 1 (Aug. 19, 2024) and 6 (Aug. 26, 2024). SO (correctly) does not even attempt to argue that retaliatory DJ case should factor into the Court's analysis. "When two actions that sufficiently overlap are filed in different federal courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

In addition, even though Dyson's patents in this case "involve the same general field of technology"—vacuums—as the Massachusetts case, there is not a substantial risk of overlap. As to Dyson's six vacuum configuration patents, they have "completely different claims and specifications" as the cleaner head patents pending in both courts. *See VCode Holdings*, 2007 WL 2238054, at *2. Even to the extent the accused products overlap between Dyson's three cleaner head patents and six vacuum configuration patents, the issues are not substantially similar where, as here, "resolving the dispute will require examination of different claim terms [and] different claim elements." *Kokusai*, 2019 WL 1281290 at *6. Indeed, as SO itself argued to the Massachusetts court in its motion to sever Dyson's three cleaner head patents, SharkNinja's vacuum configuration patents have a "distinction in the claimed subject-matter" compared to cleaner head patents. *Shark DMass*, Dkt. 129 at 5; *accord VCode Holdings*, 2007 WL 2238054, at *2. Because Dyson's vacuum configuration and cleaner head patents have completely different claims, specifications, and accused functionalities, "few, if any, conflicting or overlapping rulings will occur" as a result of allowing this case to move forward on all nine asserted Dyson patents. *Datamize*, 2004 WL 1683171, at *7. Thus, at least 2/3 of this case involves patents that do not overlap with the issues presented by the Massachusetts case and

present factual issues, legal theories (including *Markman*), and damages theories that are not at issue in the Massachusetts case.[6]

Nor will discovery in this case and the Massachusetts cases substantially overlap. SO admitted "there will only be some overlap of SharkNinja's identified witnesses for [Dyson's cleaner head patents]" because witnesses relevant to claims regarding the configuration of SharkNinja's vacuums were "not involved in the development of the accused SharkNinja cleaning heads." Dkt. 32-3 at 13. Document discovery will not substantially overlap either, as Dyson accuses a number of products of infringing its six vacuum configuration patents that it does not accuse of infringing the three cleaner head patents. Ex. 3 at 4-9.

Conveniently ignoring its own admissions that there is no likelihood of substantial overlap of issues for cleaner head patents and vacuum configuration patents, SO points to Dyson's statements that "it would be more efficient for Dyson to litigate these claims [] in the Eastern District of Texas compared to as a standalone matter in Massachusetts." Dkt. 32 at 10. Dyson stands by that statement. Once the Massachusetts court severed Dyson's cleaner head patents, proceeding with all Dyson patents in this Court is only way to give deference to Dyson's selection of this forum for the six configuration patents, while also maintaining judicial and party efficiency. Thus, Dyson's counsel told the Massachusetts court at the *Shark DMass Markman* hearing, it would be more efficient to litigate Dyson's infringement claims regarding **both** the six vacuum configuration patents **and** the three cleaner head patents together in this Court and only in this Court. *See* Ex. 1 at 144:8-145:1.

As noted, SharkNinja already told the Massachusetts court that "Dyson also could have

---

[6] And, as explained above, even as to the three cleaner head patents that are in this case and the Massachusetts case (to the extent that they are asserted against the same entities), the overlap is temporary because Dyson does not intend to pursue those claims in Massachusetts.

included its infringement claims [for Dyson's cleaner head patents] in its recently filed case in the Eastern District of Texas." Dkt. 32-2 at 11. And the Massachusetts court commented that the "practical solution about where" Dyson's patent claims should be is "all [] together someplace" and that "Texas is a nice place. You should all go there." Ex. 1 at 139:19-21, 145:7. A proper first-to-file analysis involving "considerations of judicial and litigant economy" support allowing this case to proceed in this Court. *See Genetech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). On these facts, substantial overlap between this case and the Massachusetts cases is unlikely, and this Court should not stay or dismiss this case under the first-to-file rule.

### B.  Dismissing or Staying Risks Wasting Judicial Resources

Staying or dismissing this case would also run contrary to the objective "to promote efficiency" by "avoid[ing] duplicative litigation." *Datamize*, 2004 WL 1683171, at *7. SO's discussion of "duplicative litigation" and "waste of judicial and party resources," Dkt. 32 at 1, falls flat because granting SO's motion would cause those problems, not cure them.

***First***, Dyson and SO have already expended considerable resources litigating Dyson's patent infringement claims as to both Dyson's vacuum configuration and cleaner head patents in this Court. As explained above, pursuant to the scheduling order in this case (Dkt. 17), Dyson served its infringement contentions on September 4, 2024. This Court has set dates for a *Markman* hearing and jury selection. In one week, on October 2, 2024, the parties must file a proposed Docket Control Order based on the *Markman* date (September 18, 2025) and jury selection dates (March 2, 2026). In two weeks, initial and additional disclosures, including document production, are due to be served by the parties. Pursuant to Section 3(b) of this Court's Model Discovery Order, both parties' production shall include "all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action, except to the extent these

disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas." Discovery is well underway here.

That is well-ahead of the three cleaner head patents in Massachusetts. *Dyson DMass* was filed less than two weeks ago, and while the parties proposed a schedule for that matter (*see Shark DMass*, Dkt. 175), no schedule has been set. The Massachusetts court struck SO's counter-counterclaims in *Shark DMass*, and thus the cleaner head patents will not be moving forward in that case. Therefore, staying or dismissing this case would waste resources each party has already expended and would serve only to delay resolution of Dyson's claims—particularly the six Dyson configuration patents asserted here, which sit also in SO's retaliatory, second-filed DJ action, a case in which nothing has happened. SO's concerns that the '687 Patent is subject to an instituted IPR review are belied by the fact that not all of the '687 Patent claims asserted here are under review. *Compare* Dkt. 32-4 at 2 (challenging claims 1-4, 8, and 10) *with* Ex. 3 at 3 (asserting claims 1-4 and 6-11).

***Second,*** the fastest that can be expected for a schedule for the three cleaner head patents in Massachusetts is slower than here. The trial date SO proposed is "[o]n or about Monday, April 20, 2026, at the Court's convenience." Dkt. 32-2 at 11; *Shark DMass*, Dkt. 168, Dkt. 175 at 5-6. That proposed trial date tracks time to trial in the other Massachusetts case, but is over a month ***after*** jury selection is set to begin in this Court. And that is before dealing SO's proposal, which would have the six vacuum configuration patents moved to Massachusetts as well. Prior to severance, Dyson proposed that its counterclaims on the cleaner head patents would not require moving the existing trial date of "[o]n or about Monday, July 21, 2025, at the Court's convenience." *Shark DMass*, Dkt. 135 at 2-4. While the court did sever the claims, the relevant point here is that the parties are closer to trial on all nine of Dyson's patent infringement claims

13

in this Court than in any other proceeding.

*Finally*, SO, not Dyson, is the one engaging in gamesmanship, telling the District of Massachusetts that "***Dyson also could have included its infringement claims in its recently filed case in the Eastern District of Texas***," Dkt. 32-2 at 11, only to move to dismiss after Dyson filed in this District. Throughout its briefing in *Shark DMass*, SO consistently argued it would be more efficient to bring Dyson's counterclaims in this case:

- "Dyson has chosen to assert these three counterclaims in this action at this advanced juncture of the case, when ***it just recently, on May 24, 2024 filed a Complaint for patent infringement against SharkNinja in the Eastern District of Texas asserting five other patents against numerous SharkNinja products, including all of the SharkNinja products Dyson accuses of infringement here.***" Dkt. 32-2 at 4 (citations omitted).

- "Dyson's Opposition completely ignores that ***it recently sued SharkNinja in the Eastern District of Texas asserting different vacuum patents on the same accused products***." *Shark DMass*, Dkt. 154 at 1 (July 10, 2024).

- "Moreover, Dyson's feigned concern with efficiency is directly contradicted by the fact that, shortly after it filed its counterclaims here, ***Dyson filed a separate lawsuit against SharkNinja in the Eastern District of Texas, asserting five different vacuum-related patents against the exact same products it accuses of infringement here***. ... In other words, Dyson's ***separate Texas lawsuit*** guarantees that there will be multiple discovery periods with multiple depositions and document production, multiple *Markman* hearings, multiple sets of summary judgment and *Daubert* briefing and hearings, and multiple trials. Dyson's Opposition is remarkably silent regarding its ***recently filed Texas case***, because it completely undermines Dyson's supposed concern with waste of resources." *Id.* at 7 (emphasis changed).

- "Dyson's delay in bringing its counterclaims here, as well as ***its recently filed case in Texas*** asserting patents more closely related to SharkNinja's patents against the same accused products, belies any supposed concern with duplicative proceedings." *Id.*

Now it argues the opposite. SO's gamesmanship should not be rewarded.

This Court has "an ample degree of discretion" in deciding whether all of Dyson's patent infringement claims should proceed here. *Merial*, 681 F.3d at 1299. Six of the nine patents were first-filed here and the other three were added after they were severed from the Massachusetts

14

case. To the extent SO's first-to-file arguments even apply in this case, this Court should exercise its discretion to keep all nine patents here because judicial and litigant economy is best served by proceeding with all nine patents-in-suit in this case. *See Commc'ns Test Design*, 952 F.3d at 1362–63. Staying or dismissing this case, involving nine Dyson patents, in favor of the co-pending Massachusetts action, involving just three of those patents, would be a boon to SO, delaying consideration of six Dyson patents that were indisputably first-filed in this Court and properly heard here. SO should be held accountable, not rewarded, for its dilatory efforts and jurisdictional gamesmanship.

        C.        **No "Critical Parties" Are Missing from This Case**

In a last-ditch effort, SO argues that this case should proceed in the District of Massachusetts because Dyson omitted "key parties." Dkt. 32 at 12–13. Not so. Notably, SO did not argue that this case should be dismissed for an alleged failure to join "critical parties" under Federal Rules of Civil Procedure 12(b)(7). *See* Dkt. 31. The facts show that was with good reason. Although incorporated in the Cayman Islands, SharkNinja Inc., the named defendant, is "a global product design and technology company" that sells vacuums throughout the United States, including in the Eastern District of Texas. *See* Ex. 4; Dkt. 26 ¶17; *see also* Plaintiff's Opp. To SO's Motion to Dismiss (filed concurrently herewith). SharkNinja Inc. also infringes Dyson's intellectual property by making, using, offering to sell, selling and/or importing into the United States its vacuum products. *See e.g.*, Dkt. 26 ¶53. SharkNinja Inc. has shown no reason why SharkNinja Operating LLC and SharkNinja Sales Company are necessary to resolve Dyson's claims against SharkNinja Inc.

**V.        CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion.

15

DATED: September 27, 2024                    Respectfully submitted,

                                        */s/ Jay Emerick*
                                        Jay Emeric

Melissa R. Smith
(TX State Bar No. 24001351)
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Bryan Hales, P.C. (*pro hac vice*)
Jay Emerick (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862.2000
Facsimile: (312) 862.2200
bryan.hales@kirkland.com
jay.emerick@kirkland.com

Caitlin Dean
(TX State Bar No. 24109797)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
caitlin.dean@kirkland.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 27, 2024, counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ *Jay Emerick*

Jay Emerick