# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


SHARKNINJA OPERATING LLC,           )
SHARKNINJA SALES COMPANY            )
OMACHRON ALPHA INC., and            )
OMACHRON INTELLECTUAL PROPERTY,     )
INC.,                               )      Civil Action
                                    )      No. 23-12372-ADB
           Plaintiffs,              )
                                    )
v.                                  )
                                    )
DYSON, INC. and DYSON               )
TECHNOLOGY LIMITED,                 )
                                    )
           Defendants.              )
```

BEFORE THE HONORABLE ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE

MOTION HEARING

September 17, 2024

John J. Moakley United States Courthouse
Courtroom No. 17
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

```
 1    APPEARANCES:

 2    Counsel on behalf of Plaintiffs:

 3    Mark N. Reiter
      Robert Vincent
 4    Gibson, Dunn & Crutcher LLP
      2001 Ross Ave
 5    Ste 2100
      Dallas, TX 75201
 6    214-698-3360
      mreiter@gibsondunn.com
 7
      Anthony David Brzozowski, II
 8    Wendy W. Cai
      Gibson, Dunn & Crutcher LLP
 9    1700 M Street, N.W.
      Washington, D.C. 20036
10    202-887-3614
      dbrzozowski@gibsondunn.com
11


12
      Counsel on behalf of Defendants:
13
      Bryan S. Hales
14    Adam Michael Janes
      Jay Emerick
15    Kirkland & Ellis LLP
      333 West Wolf Point Plaza
16    Chicago, IL 60654
      312-862-2000
17    bhales@kirkland.com

18    Matt Hershkowitz
      Caitlin Marie Dean
19    Kirkland & Ellis LLP (NY)
      601 Lexington Avenue
20    New York, NY 10022
      212-446-4800
21    matt.hershkowitz@kirkland.com

22


23


24


25
```

```
 1                THE COURT:  That's it, right?  All right.
 2                One other thing, I think that we theoretically still
 3   have the motion to strike the answer in the counterclaims
 4   pending, right?  My thought on that was that there would be a
 5   separate case opened because they were severed, and then you
 6   could file an answer and make a motion to strike -- make a
 7   motion to strike the answer and counterclaims in the
 8   appropriate case.  I know you disagree with that.  That was my
 9   thinking on it.
10                MR. HALES:  Just to be clear, so we filed a separate
11   case yesterday, Your Honor, and our apologies for not doing it,
12   no explanation offered right now on that, but we filed a
13   separate case yesterday.  I think from an administrative
14   perspective, the existing counterclaims that they filed in this
15   case for the patents that were severed are just in the wrong
16   home.  Those claims aren't --
17                THE COURT:  They're now in the wrong home or they were
18   in the wrong home?  You opened a new case.
19                MR. HALES:  Yes.
20                THE COURT:  Those counterclaims should be in the new
21   case.
22                MR. HALES:  They are.
23                THE COURT:  And then someone should answer the
24   counterclaims, and then there can be a motion to dismiss the
25   counterclaims, right?
```

1           MR. HALES:  Yeah.  And I guess what I would say --
2           THE COURT:  Or dismiss instead of answer, whatever you
3    want to do.  That was my thinking of how it would go.
4           MR. HALES:  Yeah, it could go that way.  All I'm
5    saying is, yeah, I don't know if they answer the claims in the
6    new case, if they do that, whether we would move to dismiss
7    them or not.  We may, or we may have some conversations about
8    it.  But I think just procedurally and administratively where
9    they are now doesn't make any sense because our affirmative
01:58 10   claims are now presented in the new case.
11          THE COURT:  Right.  So I completely agree with you it
12   doesn't make any sense, and I would love to see that case go
13   away.  But I think pursuant to the rules, the case was severed
14   and the counterclaims were severed, right?
15          MR. HALES:  Correct.
16          THE COURT:  So they have to be severed.
17          MR. HALES:  Correct.
18          THE COURT:  And then they were basically re-filed in
19   Texas, right?
01:59 20         MR. HALES:  Both things, Your Honor.
21          THE COURT:  Can we make this go away here?  Why do we
22   have to have it here?
23          MR. HALES:  Well, this is what I would suggest, Your
24   Honor, and this is just a proposal, right?  So when Your Honor
25   severed the claims, we told them and the court that we would --

1   we already had six patents filed pending in Texas, right, and
2   Your Honor disagreed with us that they should remain here.  So
3   we said why don't we just move them there, and then we have two
4   cases going, one here and one there.
5           The one here has all of Shark's patents, except the
6   ones they've sued us in the ITC as well, that's neither here
7   nor there at the moment, and we would have our patents
8   proceeding in Texas.  Then as a result of the fact that,
9   because they were severed and you rightly do still have them in
10  your court, now we have filed yesterday the three patents in a
11  new case here.  So at the moment, those three patents exist as
12  part of our counterclaim in Texas, and they also exist as part
13  of the new case in this court.  And clearly, that can't be --
14  that shouldn't be the end-all be-all.
15          Shark has already filed in Texas a motion to dismiss
16  or transfer that case up to this court, which I'm sure you're
17  excited to hear.  But they're asking that the nine patents that
18  we have in Texas be dismissed or transferred to the District of
19  Massachusetts.  And so our opposition to that is due next week
20  sometime, if I have the date right, and that will proceed
21  through.
22          So that Texas case has our original six plus, by
23  virtue of the amendment we did, the three that are also here.
24  Now you have the three here.  And we could go down the path of
25  them answering and the parties briefing dismissal and transfer

|   |   |
|---|---|
| 1 | motions in parallel here on those patents, right, the three |
| 2 | patents that are here.  Shark has also now filed a declaratory |
| 3 | judgment claim in this court that picks up the six patents that |
| 4 | we originally filed in Texas. |
| 5 | And so we have lots of -- there's lots of presently |
| 6 | duplicative -- my suggestion from an efficiency standpoint is |
| 7 | the Texas court has one brief in and will get a second brief in |
| 8 | next week.  That court is going to decide whether those claims |
| 9 | it believes should stay in Texas or not.  That includes the six |
| 02:01 10 | that we filed there and only there, plus the three that were |
| 11 | here. |
| 12 | If the Texas court dismisses or transfers that case up |
| 13 | to here, then, for better or for worse, all nine of those |
| 14 | patents will be here, and we wouldn't need -- that would be |
| 15 | duplicative with the case we just filed yesterday with three. |
| 16 | On the other hand, if the Texas court keeps those patents down |
| 17 | there and believes that it should, then we're running into the |
| 18 | risk of conflict if we're also simultaneously briefing in this |
| 19 | court whether three should stay here. |
| 02:02 20 | So at least as a proposal, to avoid all of that, my |
| 21 | suggestion would be we put our opposition in in Texas.  We let |
| 22 | the Texas court decide whether the patents should stay in Texas |
| 23 | or not.  And then at the end of the day, either way, we have |
| 24 | those nine patents in one case and only one case, and it's |
| 25 | either Texas or here.  That's a suggestion.  And I think that |

1  would at least eliminate some of the possible briefing that we
2  could do and maybe all of it in this court.
3         MR. REITER:  My turn.  The problem counsel is avoiding
4  is the first-filed rule.  And I assume the court is aware of
5  that.  The court first-seized of a dispute is the court that
6  gets to decide what happens with that.  And for better or
7  worse, Your Honor, you drew the short straw.  You are the court
8  that first got the dispute.  And I'm not talking about just the
9  overall dispute.  I'm talking about the three patents.
02:03 10         So they filed those three patents as a counterclaim in
11  this case.  They waited a long time, as you pointed out, and we
12  moved to sever.  We said they don't belong here.  A few weeks
13  later, later, they filed the Texas case, so that's the second
14  case.  We said in response to -- or they said in response to
15  our sever motion, they said SharkNinja and Omachron are saying,
16  well, they should all be together -- strike that.  This is like
17  a civil procedure class.  We were joking about this.
18         THE COURT:  This is why I'm never buying either one of
19  your vacuum cleaners.  Can someone just come up with a
02:04 20  practical solution about where they should be?  They should all
21  be together someplace, right?
22         MR. REITER:  Yes, they all should be together and they
23  should be here.  This is where the case belongs.  This is where
24  the parties are.  This is where the evidence is.  This is where
25  SharkNinja is.  This is where the case began.  This is where

1  they first filed those three patents.

2          They say all of those patents now, by trying to bring
3  them -- in fact, bringing them to Texas second all belong
4  together.  They have conceded that it is one dispute.  It's one
5  controversy.  You got it first.  As a result of that, you get
6  to decide where it stays.

7          The Fifth Circuit, which is what Judge Gilstrap in
8  Texas has to follow, says that the court first-seized of the
9  controversy -- and the First Circuit follows this as well.  The
10 court first-seized of the controversy gets to decide.  He has
11 to sit back and wait for you to decide do you want this case,
12 should this case be here or not.

13         THE COURT:  Do you want me to answer that?

14         MR. REITER:  I know what your answer is going to be.
15 No, I don't want you to.  What I respectfully ask is let us go
16 ahead.  We filed our answer and counterclaims,
17 counter-counterclaims to their claims before they ever moved
18 the patents to Texas or tried to move the patents to Texas.
19 They can't under Rule 41 voluntarily dismiss those patents,
20 which I think they tried to do, and move them to Texas.  Those
21 patents are here.

22         And we did file a declaratory judgment action based on
23 those six patents that were originally filed in Texas.  And
24 again, because Dyson has now said it all ought to be together,
25 it all ought to be together, it started here and it needs to

1  stay here.
2       Now, we did file a motion to dismiss the case in Texas
3  because there's no personal jurisdiction.  What's really
4  interesting is that Dyson played again another procedural game.
5  They didn't sue SharkNinja operating or SharkNinja sales who
6  are the parties they know are responsible for the sales and the
7  manufacturer of the products.  They sued a holding company
8  that's based in the Cayman Islands because there's no venue
9  under 1400 over the actual operating entities in Texas.  So
10 we've got a motion to dismiss for lack of personal jurisdiction
11 because SharkNinja, Inc. doesn't do anything.  That's a Judge
12 Gilstrap issue.
13      We also have a motion to transfer under 1404 because,
14 just like they tried to move this vacuum case here to Illinois
15 and as Your Honor said really seems like everything belongs
16 here, this is where the witnesses are, there's nothing in
17 Illinois, there is absolutely nothing in Texas, nobody has
18 anything in Texas, we filed a 1404 motion.
19      And we've also filed, now that they've tried to move
20 these three original patents to Texas, a motion to dismiss or
21 at least stay with Judge Gilstrap in Texas based on the
22 first-filed rule saying, Judge, with all due respect to you in
23 Texas, this belongs to Judge Burroughs because the case was
24 first filed in Massachusetts.
25      So what we should be doing, Your Honor, they now have

1  complied with your order.  They've opened a new case.  We have
2  answered those claims in this case because they waited so long
3  to do it.  And we can move those over.  But our answer and our
4  counterclaim came first before they ever filed them in Texas.
5         So what we would propose is this case stay here.  If
6  they want to file a motion to strike our answer, then we can
7  brief that.  I don't think there's any basis to do that.  We've
8  already answered.  We can consolidate the other patents that
9  were filed in Texas with this case.  We have one case we
10 propose to schedule, as Your Honor had requested that we do.
11 They didn't join in that schedule, but we did propose it.  We
12 complied with it.
13         THE COURT:  You filed it as a related case, right?
14         MR. REITER:  Yes, we did.
15         THE COURT:  Is it actually related?
16         MR. REITER:  It's related based on the allegation that
17 the same products are accused between the three patents and the
18 ones in Texas.  It's based on overlapping witnesses.  Yes,
19 there is a relationship between the cases because it's the same
20 products, the same witnesses would come.
21         THE COURT:  Does it satisfy our relatedness rules?
22         MR. REITER:  My understanding is yes, it does, Your
23 Honor. We looked into that, we did.  So, Your Honor, again,
24 and I know it's not the answer you want, but the way that the
25 courts, the First Circuit, the Fifth Circuit have applied this

1   is, Your Honor has the case.  You were first-seized of
2   jurisdiction over this controversy, which Dyson has now said is
3   one controversy.  It belongs here.  It should stay here.
4            MR. HALES:  Could I offer a few thoughts, Your Honor?
5            THE COURT:  Sure.
6            MR. HALES:  Yeah, so number one, there's no doubt that
7   there is a first-filed rule that relates to which court should
8   consider claims put before it.  One thing I want to make clear,
9   though, is there is an overstatement by my friend here about
02:09 10  whether it's all the same dispute.  That's not the point.  The
11  question we face now, and we thought we faced -- we thought at
12  the time we were opposing severance is what's the most
13  efficient.  They have not -- they don't want every case before
14  Your Honor.  They have filed a case against Dyson in April of
15  this year at the International Trade Commission for
16  infringement of five other patents.  So they want different
17  forums at different times for different reasons as well.
18           We filed the original six patents in Texas, five and
19  then we added one, in Texas, originally the five back in May of
02:09 20  this year.  Those patents were first presented in any case to
21  any court by us in Texas in that May filing.  So we had
22  disputes going on here.  They sued us at the ITC in April.  We
23  sued them in Texas in May.
24           Judge Gilstrap in Texas is the first court that had a
25  filing with those five and then six patents.  So the idea that

```
 1   this broader dispute was first joined by Your Honor I think is
 2   just an overstatement in terms of the process.  It is true that
 3   we filed the three patents as counterclaims originally in this
 4   case.  And our view, you don't need to hear this again, but our
 5   view was because of the overlap and accused products versus the
 6   practicing products, we could accommodate on the same schedule.
 7   Your Honor went against us on that, which we respect.
 8              And then the question becomes do we want two cases or
 9   three cases.  And having had them severed, our thinking was
10   let's have two cases, one here in this court, one in Texas.
11   And that's what we tried to achieve.  And to be clear, we were
12   very open about it with them and the court.  So that's why I
13   say at least where we stand now, right, I think, although Your
14   Honor did have the three patents first in the counterclaim, the
15   fact is that the briefing that we have before Judge Gilstrap on
16   the six plus the three will resolve the jurisdictional
17   questions and the 1404 questions that they have made at a time
18   presumably ahead of whatever briefing we do here.  And he's
19   going decide to do it, transfer it or keep it.  And if he
20   decides to keep it, then we have all nine there.  If he decides
21   to transfer it, we have all nine here.
22              That's more efficient than having part here, part
23   there.  But to be clear, our belief is they should all be
24   there, those patents.  And here we have already got the cases
25   going that they asserted against us, and obviously their cases
```

1  in the ITC are going to proceed in the ITC.
2          MR. REITER:  Trying to bring them all together, they
3  conceded, it's one dispute.  That's what they've done now.
4          THE COURT:  I'm going to let it ride and just see what
5  happens.  Everybody will file what they're going to file
6  wherever they're going to file it, and I'll rule on what's in
7  front of me.  Texas is a nice place.  You should all go there.
8          MR. REITER:  That's where I live.
9          MR. HALES:  Just from a housekeeping matter, Your
10 Honor, it seems like though the numbering, if nothing else, the
11 numbering is different.  We filed a new pleading in this court
12 yesterday, which is an infringement claim with three patents,
13 not as a counterclaim.  So I think just administratively, I
14 think they will, they should answer that pleading, and we'll
15 see what happens.
16         And then the answer that they filed that is close but
17 not numerically and administratively identical, it just doesn't
18 need to exist anymore.  It seems like -- I don't know if you
19 withdraw it or whatever the court wants to do.  We just won't
20 need it, right?  That seems duplicative and unnecessary.
21         THE COURT:  Figure it out amongst yourselves.  You'll
22 file what you file and I'll deal with whatever is in front of
23 me.  But however inconvenient this is now going to turn out to
24 be for me and for you, those claims were just too late in this
25 case.  I wasn't going to hold this case up over that one.

```
 1                MR. HALES:  Understood.
 2                THE COURT:  So we may all live to regret that decision
 3   from what I'm hearing, but nonetheless I think that was the
 4   right decision to make just in terms of moving the calendar
 5   along.
 6                All right.  The motion to dismiss the inequitable
 7   conduct counterclaims is also still pending, right?
 8                MR. HALES:  Yes, Your Honor.
 9                MR. REITER:  Yes.
02:13 10          THE COURT:  Do you all want to have argument on that?
11   I'm sort of unclear on what's going on there.  I'm not sure
12   it's been adequately pled.  I'm just not sure which way to go
13   on it.  So do you want to have argument on that?
14                MR. REITER:  If Your Honor is not clear on it, then
15   absolutely we want to have argument to be able to answer the
16   questions Your Honor has.  The Exergen standard is very clear.
17                THE COURT:  You may be right about that.  So, I mean,
18   that's where it stands.  I'm not sure you've complied with
19   that.  So I should ask, I guess, if you want to be heard.
02:14 20          MR. HALES:  We're happy to have hearing on it to try
21   to persuade Your Honor that we have met the standard.
22                THE COURT:  Or you can withdraw the motion.
23                MR. HALES:  Also true.  I could look at it.  Let me
24   take a look at it.
25                THE COURT:  So I'm not sure you've pled it adequately.
```

```
 1   But then again, as I say, I'm no expert in this area of the
 2   law, so I may be wrong about that, too.  So why don't you
 3   figure out what you want to do.  Then if you want to have
 4   argument on it, let's get that set up.
 5              MR. HALES:  We appreciate the guidance on that, Your
 6   Honor.
 7              MR. REITER:  How would we -- should we talk to your
 8   courtroom administrator to set up a hearing?
 9              THE COURT:  Yes.  She'll be happy to hear from you.
10              MR. REITER:  As happy as you.
11              THE COURT:  I've been a judge for almost ten years.  I
12   cannot think of a minute where I haven't had a vacuum cleaner
13   case involving one of the two of you in front of me.
14              MR. REITER:  And you still don't vacuum at home.  Is
15   that why?
16              THE COURT:  I don't have any of your vacuum cleaners.
17              MR. REITER:  I think you've made that clear a few
18   times.
19              THE COURT:  Because -- I don't know.
20              MR. REITER:  I was going to ask you if you know what
21   brand you have.
22              THE COURT:  You're spending too much money on
23   litigation costs.  Right, Tim?
24              All right.  Anyway, that's where I stand on those.
25              MR. REITER:  Thank you, Your Honor.  We'll wait for a
```

```
 1   date.
 2           THE COURT:  As I say, it may be my own
 3   unsophistication on this.  You may look at them and think I
 4   have lost my mind, in which case we'll have argument, but I'm
 5   not sure that you've satisfied the standard.
 6           MR. HALES:  I appreciate the guidance, and we will
 7   take a hard look at that, Your Honor.
 8           THE COURT:  Anything else for today?
 9           MR. REITER:  No, thank you, Your Honor.
10           MR. HALES:  No, Your Honor, thank you.
11           THE COURT:  Thanks everyone.  We're recessed.
12           (Adjourned, 2:16 p.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2

3              I, Kelly Mortellite, Registered Professional

4    Reporter, Registered Merit Reporter and Certified Realtime

5    Reporter, in and for the United States District Court for the

6    District of Massachusetts, do hereby certify that the foregoing

7    transcript is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter to the best of my skill and ability.

10                   Dated this 20th day of September, 2024.

11

12                   /s/ Kelly Mortellite

13                   _____

14                   Kelly Mortellite, RPR, RMR, CRR

15                   Official Court Reporter
```