**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| DYSON, INC. and DYSON TECHNOLOGY LIMITED., | |
| *Plaintiffs*, | |
| v. | CASE NO. 2:24-CV-00386-JRG |
| SHARKNINJA, INC., OMACRHON ALPHA INC., and OMACHRON INTELLECTUAL PROPERTY INC., | **JURY TRIAL DEMANDED** ██████████████ |
| *Defendant*s. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, MOTION TO TRANSFER PLAINTIFFS' INFRINGEMENT CLAIMS
<u>UNDER 28 U.S.C. § 1404 (Dkt. 31)</u>**

## TABLE OF CONTENTS

I.     Introduction ............................................................................................................ 1

II.    Statement of the Issues ........................................................................................ 3

III.   Factual Background .............................................................................................. 4

     A.     Dyson, Inc. & Dyson Technology Limited .............................................. 4

     B.     SharkNinja, Inc. ....................................................................................... 4

     C.     Omachron Alpha Inc. & Omachron Intellectual Property Inc. ............... 5

     D.     Litigation Between the Parties ................................................................. 5

IV.   SO is Subject to Personal Jurisdiction in this Court ........................................ 7

     A.     SO Has More than Minimum Contacts Sufficient for Personal Jurisdiction .......... 8

         1.     This Court Has Routinely Held that Companies Who Call Themselves Holding Companies in the Briefing Are Subject to Personal Jurisdiction ...................................................................... 9

         2.     SharkNinja Inc. Has More Than Minimum Contacts for Personal Jurisdiction ............................................................................ 10

     B.     SO Is Subject to Personal Jurisdiction Under 4(k)(2) .......................... 14

V.     SO's Alternative Motion to Transfer Should be Denied ............................... 16

     A.     Legal Standard ....................................................................................... 16

     B.     Dyson's Choice of Venue Should Not be Upset ................................... 17

         1.     Venue ......................................................................................... 18

         2.     The Relative Ease of Access to Sources of Proof ..................... 18

         3.     The Availability of Compulsory Process to Secure the Attendance of Witnesses ...................................................... 22

         4.     The Cost of Attendance for Willing Witnesses ........................ 23

         5.     All Other Practical Problems That Make a Trial Case Easy, Expeditious, And Inexpensive .................................................. 24

         6.     The Administrative Difficulties Flowing from Court Congestion ............ 25

### TABLE OF CONTENTS (CONT'D)

**Page**

      7.   The Local Interest in Having Localized Interests Decided at Home ........ 26

      8.   The Familiarity of The Forum with The Law That Will Govern the Case & The Avoidance of Unnecessary Problems of Conflicts of Law ........................................................................................................... 27

**VI.**    **SO Should be Judicially Estopped from Challenging Jurisdiction & Venue in this Court** .......................................................................................... 27

**VII.**   **Shark's Remaining Arguments Are Meritless** ............................................. 27

**VIII.**  **If Necessary, Dyson Requests Jurisdictional Discovery** ........................... 28

**IX.**    **Conclusion** .......................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
   572 F. Supp. 3d 291 (W.D. Tex. 2021) .................................................................8

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. 2013) ...............................................................22

*AGIS Software Dev. LLC v. Huawei Device USA Inc.*,
   No. 2:17-cv-00513, 2018 WL 2329752 (E.D. Tex. May 23, 2018) ......................22

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
   480 U.S. 102 (1987) ..........................................................................................15

*AX Wireless LLC v. Lenovo Grp. Ltd.*,
   No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023) ............ *passim*

*Balawajder v. Scott*,
   160 F.3d 1066 (5th Cir. 1998) ...........................................................................16

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994) .........................................................................1, 8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .......................................................................................9, 15

*C&J Rent Servs., Inc. v. LEAM Drilling Sys., LLC*,
   No. 2:19-cv-00079-JRG-RSP, 2019 WL 3017379 (E.D. Tex. July 10, 2019) ......................22

*Davis v. Wakelee*,
   156 U.S. 680 (1895) ..........................................................................................27

*Defense Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) .........................................................................16, 21

*Digital Broad. Sols., LLC v. DISH Network L.L.C.*,
   No. 2:22-CV-00335-JRG, 2023 WL 11805298 (E.D. Tex. Jan. 19, 2023) ...........................28

*Dyson, Inc. et al. v. SharkNinja, Inc. et al.*,
   Case No. 24-12373 (D. Mass.) Dkt. 1 .............................................................6, 7, 24

*Dyson, Inc. et al v. SharkNinja, Inc. et al.*,
   Case No. 24-cv-12373 (D. Mass.) Dkt. 9 .......................................................3, 14, 28

### TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Elecs. For Imaging, Inc. v. Coyle*,
   340 F.3d 1344 (Fed. Cir. 2003) ................................................................7, 8, 9, 13

*Emerging Auto. LLC v. Kia Corp.*,
   No. 2:23-CV-00434-JRG, 2024 WL 3170398 (E.D. Tex. June 25, 2024) .......................23, 25

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
   737 F.3d 704 (Fed. Cir. 2013) ....................................................................24

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   No. 2:16-CV-0134-JRG-RSP, 2017 WL 970383 (E.D. Tex. Mar. 1, 2017),
   report and recommendation adopted, No. 2:16-CV-134-JRG-RSP, 2017 WL
   1154921 (E.D. Tex. Mar. 28, 2017) ..............................................................13

*Hossaini v. W. Mo. Med. Ctr.*,
   140 F.3d 1140 (8th Cir. 1998) ....................................................................27

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ......................................................................26

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ...............................................................22, 23

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) ...................................................................25

*In re Hoffman-La Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ...................................................................22

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) .............................22, 23

*In re Planned Parenthood Fed'n of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) ................................................................. *passim*

*In re Samsung Electronics Co., Ltd.*,
   2F. 4th 1371 (Fed. Cir. 2021) .....................................................................27

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ..........................................................18, 20, 22, 23

*In re Triton Ltd. Sec. Litig.*,
   70 F. Supp. 2d 678 (E.D. Tex. 1999) .............................................................16

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ......................................................................17

### TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ............................................................................16, 17

*Japan Display Inc. v. Tianma Microelectronics Co., Ltd.*,
    No. 2:20-CV-00283-JRG, 2021 WL 3772425 (E.D. Tex. Aug. 25, 2021)............................21

*Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*,
    No. 4:19-CV-696, 2020 WL 569815 (E.D. Tex. Feb. 5, 2020)................................................4

*Lifetime Brands, Inc. v. QIMA Ltd.*,
    No. 2:23-CV-00216-JRG, 2024 WL 896344 (E.D. Tex. Mar. 1, 2024)................................29

*New Hampshire v. Maine*,
    532 U.S. 742 (2001)............................................................................................................27

*Northstar Systems LLC v. Volkswagen AG*,
    Case No. 2:22-cv-286, Dkt. 66 (E.D. Tex. Aug. 30, 2023) ...............................................26, 27

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    626 F.3d 1222 (Fed. Cir. 2010)........................................................................................2, 8

*Orange Elec. Co. v. Autel Intelligent Tech. Corp.*,
    No. 2:21-CV-00240-JRG, 2022 WL 4368160 (E.D. Tex. Sept. 21, 2022) ...........9, 10, 11, 15

*Powerhouse Prods., Inc. v. Widgery*,
    564 F. Supp. 2d 672 (E.D. Tex. 2008)..................................................................................13

*Reed v. City of Arlington*,
    650 F.3d 571 (5th Cir. 2011) .............................................................................................27

*SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*,
    Case No. 1:23-cv-12372 (D. Mass.), Dkt. 129 .............................................................. *passim*

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir.1970).................................................................................................16

*Slyde Analytics, LLC v. Zepp Health Corp.*,
    No. 2:23-CV-00172-RWS-RSP, 2024 WL 3927228 (E.D. Tex. Aug. 22, 2024)..............18, 19

*Sportscastr Inc. v. Sportradar Grp., AG*,
    No. 2:23-CV-00472-JRG, 2024 WL 4219252 (E.D. Tex. Sept. 17, 2024) ..................2, 10, 11

*Sportscastr Inc. v. Sportradar Grp., AG*,
    No. 2:23-CV-00472-JRG, Dkt. 17 .......................................................................................10

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
    474 F.3d 1298 (Fed. Cir. 2007)...........................................................................................27

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Vocalife LLC v. Amazon.com, Inc.*,
   No. 2:19-cv-00123, 2019 WL 6345191 (E.D. Tex. Nov. 27, 2019)........................................17

*World-Wide Volkswagen*,
   444 U.S. 286 (1980)...........................................................................................1, 8, 15, 16

*Young v. Armstrong World Indus.*,
   601 F.Supp. 399 (N.D. Tex.1984) ...........................................................................16

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................17

35 U.S.C. § 271(a) ..............................................................................................2

**Rules**

Fed. R. Civ. P. 4(k)(2)........................................................................... *passim*

Fed. R. Civ. Proc. 12(b)(6) .................................................................................2

## I.    INTRODUCTION

The Court should deny Defendants' motion because the Court has personal jurisdiction over them and venue is proper. Plaintiffs' choice of forum is thus owed deference.

The Court has personal jurisdiction over SharkNinja, Inc., Omachron Alpha Inc., and Omachron Intellectual Property Inc. (collectively, "SO") because SO has minimum contacts with Texas. When a company—like SO—"delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state" the minimum contacts test is satisfied. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Indeed, it is undisputed (1) the accused products are sold here; (2) Dyson's allegations of infringement arise from these sales; (3) SharkNinja, Inc. knows the accused products are sold here, and intended the accused products to be sold here; (4) the Omachron Defendants jointly developed the accused products for placement in the stream of commerce and knew and intended these products to be sold here.

SO challenges jurisdiction for one reason: SO disputes whether SharkNinja, Inc. (rather than its subsidiaries) makes or sells the accused products into the stream of commerce, calling it a "holding company" that "does not develop, manufacture, sell, offer to sell or import the accused vacuum products," and that its subsidiaries are responsible for its design, development, importation, sale, and marketing of the Accused Products in the United States Dkt. 31 at 3-5. SO's effort to avoid answering for its infringement in this Court fails. SharkNinja, Inc. is at the head of the SharkNinja group of companies: it is the publicly-traded entity (NYSE: SN) to which the revenues from the accused products flow, it shares executives and management teams with other SharkNinja entities to manufacture and distribute Accused Products in the United States, and it conducts business with its customers through its website—and through retailers in this

District—each of which allow customers to purchase the Accused Products. That is more than sufficient for personal jurisdiction. *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023).

A defendant—like SharkNinja, Inc.—"need not itself sell the accused goods in the forum" and "need not itself manufacture the accused goods." *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701, at *3 (E.D. Tex. Sept. 6, 2023) (citing *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1232–1233 (Fed. Cir. 2010)). Further, where there is jurisdiction over a foreign parent—including a foreign parent that claims to be a holding company—there is no need to name its U.S. subsidiaries. *Sportscastr Inc. v. Sportradar Grp., AG*, No. 2:23-CV-00472-JRG, 2024 WL 4219252, at *5, n.5 (E.D. Tex. Sept. 17, 2024); Ex. 1.

Quite notably, when successfully arguing that the District of Massachusetts should sever three Dyson patents from a case pending there, SharkNinja, Inc. said "Dyson also could have included its infringement claims in its recently filed case in the Eastern District of Texas, which includes all of the SharkNinja products Dyson accuses here." *SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*, Case No. 1:23-cv-12372 (D. Mass.) ("*SN v. Dyson*"), Dkt. 129 at 11. It now argues Dyson "should have filed these claims in Massachusetts." Dkt. 31 at 2. It cannot have it both ways. On top of that, SO did not move to dismiss Dyson's allegations of infringement under Rule 12(b)(6) on the grounds that it does not make, use, sell, or offer for sale the accused products. *See* Dkt. No. 31; *see also* 35 U.S.C. § 271(a).

And SO's statements about jurisdiction do not end there: just three days ago, SO admitted that it is subject to jurisdiction under Rule 4(k)(2), telling the Massachusetts court that "SharkNinja Inc., Omachron Alpha Inc., and Omachron Intellectual Property Inc. **admit** for

purposes of this case only *that they are subject to jurisdiction* in Massachusetts *pursuant to Fed R. Civ. P. 4(k)(2)*. Ex. 2, *Dyson, Inc. et al v. SharkNinja, Inc. et al.*, No. 24-cv-12373 (D. Mass.) Dkt. 9 ¶ 16. SO's statement applies equally here. The Court has jurisdiction over SO.

As to transfer, SO has not established that Massachusetts is "clearly more convenient" than this Court, such that Dyson's choice of forum should be overridden. Indeed, the facts show that (1) that SharkNinja's own documents and witnesses are nationwide—including offices with documents and employees in California, Arkansas, and Alabama relating to product testing, marketing, and sales that are closer to Marshall than Boston, that the majority of Dyson's physical and documentary evidence is at its U.S. headquarters in Illinois, which is also closer to the Marshall courthouse than the Boston courthouse, (2) that there are more unwilling witnesses in the Eastern District of Texas than Boston, (3) that SO concedes that Dyson is a competitor, meaning that a short time to trial is of the utmost importance. Further, there are now two pending cases between the parties related to Dyson patents, and judicial efficiency would be best served by moving forward with all of Dyson's patents in this case.

Accordingly, this Court should deny SO's Motion in its entirety.

## II.    STATEMENT OF THE ISSUES

1.    Whether Dyson has pleaded that SO has minimum contacts with Texas by it or its subsidiaries developing and placing the accused products into the stream of commerce, knowing and intending the same to be sold in Texas, or that suit in the Eastern District of Texas for patent infringement was otherwise sufficiently foreseeable. Answer: Yes.

2.    Whether SO has shown the District of Massachusetts is so clearly a more convenient forum than the Eastern District of Texas that it warrants disturbing Dyson's choice of forum. Answer: No.

### III.    FACTUAL BACKGROUND

#### A.    Dyson, Inc. & Dyson Technology Limited

Dyson Technology Limited is a foreign private limited company organized and existing under the laws of England and Wales. Dkt. 26 ¶ 16.

Dyson Inc. is a United States corporation organized and existing under the laws of the State of Illinois. Dkt. 26 ¶ 15 Dyson Inc.'s principal place of business and the primary location where it stores physical products and documents in the United States is in Chicago, Illinois. *Id.*

#### B.    SharkNinja, Inc.

SharkNinja, Inc. is a publicly traded corporation organized under the laws of the Cayman Islands. Dkt. 26 ¶¶ 17, 30. When a foreign corporation—like SharkNinja, Inc.—is sued for patent infringement, it is subject to suit in any judicial district—like the Eastern District of Texas. *Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, No. 4:19-CV-696, 2020 WL 569815, at *4 (E.D. Tex. Feb. 5, 2020). SharkNinja Inc. sits at the top of the SharkNinja group of companies: revenue from sales of the Accused Products flow to SharkNinja Inc., which reports sales and earnings in its 10K, and SO admits that at least SharkNinja Inc.'s subsidiaries make and sell the Accused Products.

SO argues that SharkNinja, Inc. is a "holding company" with "no assets." Dkt. 31 at 3, 5, but the plead facts show otherwise. SharkNinja, Inc. reported to its investors (and the world) in its 2023 Annual Report that "we sell our products." Dkt. 26 ¶¶ 22–32. In fact, two days after filing the Motion, SharkNinja, Inc. told the world "[t]oday at IFA [(Innovation For All)] 2024, ***SharkNinja, Inc. (NYSE: SN) a global product design and technology company, is introducing two new vacuums*** with first-of-their-kind capabilities." Ex. 3 (https://sharkninja.com/new-shark-powerdetect-technology/). And SO explains that SharkNinja, Inc. "oversees the distribution, and enhancement in value, of its shares," Dkt. 31 at 4, and "reports consolidated earnings attributable

4

to income earned by its subsidiaries." Dkt. 31 at 6. SharkNinja, Inc. has assets at least in the form of shares and subsidiaries, is involved in their operations, and reports their income. Now calling itself a mere "holding company" in order to avoid this Court's jurisdiction, is irrelevant to that question.

SO also argues SharkNinja, Inc. ███████████████████████████████████ ████████████████ Dkt. 31 at 5. But again, the facts show otherwise. For example, SharkNinja's website identifies Elizabeth Norberg as the "Chief People Officer for SharkNinja, Inc." Ex. 4 (https://sharkninja.com/our-company). And SharkNinja, Inc. has issued press releases stating that "SharkNinja Inc. (NYSE: SN), a global product design and technology company," announced that "Adam Petrick has been named as its Chief Marketing Officer" and that "Patraic Reagan has been named Chief Financial Officer." Ex. 5 (https://s202.q4cdn.com/977000893/files/doc_news/SharkNinja-Announces-Appointment-of-Adam-Petrick-as-Global-Chief-Marketing-Officer-2023.pdf); Ex. 6 (https://sharkninja.com/sharkninja-unveils-new-product-innovation-and-category-expansions-at-its-first-emea-product-forum-2/).

### C.    Omachron Alpha Inc. & Omachron Intellectual Property Inc.

The Omachron Defendants are corporations organized under the laws of Canada. Dkt. 26 ¶¶ 18–19. The Omachron Defendants work with SharkNinja Inc. to develop, test, and place the Accused Products into the stream of commerce. For example, Omachron's license with SharkNinja obligates it to conduct ███████████████████████████████ ████████████████████████████████████████████ Dkt. 31-21, Millman Declaration at ¶ 8.

### D.    Litigation Between the Parties

***Dyson v. SO EDTex* (this case).** Dyson filed its Complaint on May 24, 2024, asserting five patents which have only ever been asserted by Dyson in this Court. *See* Dkt. 1. On August 26, 2024, Dyson amended its Complaint to assert four additional patents, one of which has only ever been asserted by Dyson in this Court.[1] *See* Dkt. 26 ¶ 14. There is no credible argument that these six patents were filed first elsewhere or that they should be transferred out of this Court.

***SN v. Dyson & Dyson v. SN II*** - Dyson initially asserted the other three patents (U.S. Patent Nos. 9,021,655; 10,292,556; and 10,786,127) as counterclaims in the District of Massachusetts on May 10, 2024. *SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*, Case No. 1:23-cv-12372 (D. Mass.) ("*SN v. Dyson*") Dkt. 123 at 365-377. SharkNinja and Omachron entities in that case—which include SO—successfully moved to sever these three patents from *SN v. Dyson*. *See SN v. Dyson*, Dkt. 128, 129, 168. In its motion, SO argued: "***Dyson also could have included its infringement claims in its recently filed case in the Eastern District of Texas***, which includes all of the SharkNinja products Dyson accuses here." *SN v. Dyson*, Dkt. 129 at 11. SO further argued it would be more efficient to bring Dyson's counterclaims in this case. *See id.* at 4; *SN v. Dyson*, Dkt. 154 at 1, 7. The Massachusetts court granted the motion holding Dyson's counterclaims "are hereby severed and shall proceed in a new independent action" and directed Dyson to open a new case. *SN v. Dyson*, Dkt. 168.

Two business days later, in light of SO's statements, Dyson informed SO it would amend its complaint in this case to assert the severed claims. Ex. 7 (Emerick Email to Vincent). Later that same day, SO attempted to reinsert the just-severed patents back into *SN v. Dyson* by

---

[1]    SO's argument that the '687 Patent is subject to an instituted IPR is of no moment: it is irrelevant to personal jurisdiction and transfer. Further, not all of the '687 Patent claims asserted here are under review. *Compare* Dkt. 32-4 at 2 (challenging claims 1-4, 8, and 10) *with* Ex. 8 (Infringement Contentions Pleading) (asserting claims 1-4 and 6-11).

answering Dyson's severed counterclaims and asserting claims for declaratory judgment of non-infringement and invalidity of the same patents. *SN v. Dyson*, Dkt. 169 at 20–27. Believing SO's injection of these patents back into *SN v. Dyson* to be inoperative, Dyson (1) notified the Massachusetts court Dyson would add the severed patents to this case, (2) amended its Complaint in this case to add the severed patents (and one other patent), and (3) moved to strike SO's pleading purporting to re-introduce patents to *SN v. Dyson*, which the Court granted. *See* Dkt. 26; *SN v. Dyson*, Dkt. 170, 173, 174. The Massachusetts court held "Defendant's infringement counterclaims are not mooted by severance and remained pending before this Court" and "reiterate[d] its instructions to open a new case" by September 16, 2024, and Dyson did so. *SN v. Dyson*, Dkt. 189 (Sept. 13, 2024); *Dyson, Inc. et al. v. SharkNinja, Inc. et al.*, Case No. 24-12373 (D. Mass.) ("*Dyson v. SN II*"), Dkt. 1.

       **SN v. Dyson II** - On August 19, 2024, certain SharkNinja entities filed a complaint in Massachusetts seeking a declaratory judgment of noninfringement for the five patents Dyson originally asserted here. *SharkNinja Operating LLC et al. v. Dyson, Inc. et al.*, No. 1:24-cv-12130 (D. Mass.) ("*SN v. Dyson II*"), Dkt. 1. On August 26, 2024, SO added the sixth patent that Dyson has only ever asserted here. *SN v. Dyson II*, Dkt. 6.

## IV.    SO IS SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

       "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). It is undisputed that (1) the Accused Products are sold in Texas; (2) that the infringement allegations arise from Texas sales; and (3) SharkNinja Inc. knows of and intends these Texas sales. *See* Dkt. 26 ¶¶ 21–26. It is likewise undisputed that Omachron jointly developed the accused products for placement in the stream of commerce, knowing of and intending Texas sales. Dkt. 26 ¶ 39. Further, "[i]n the procedural posture of a

motion to dismiss, a district court must … resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. For Imaging*, 340 F.3d at 1349.

While SharkNinja, Inc. says it is a mere holding company and should therefore not be subject to personal jurisdiction, the facts alleged in the complaint show otherwise and, in any event, this Court has repeatedly held that defendants who call themselves holding companies are properly subject to personal jurisdiction based on circumstances like those present here.

The Omachron Defendants fare no better. They argue that they are not subject to personal jurisdiction because they merely developed the accused products. But developing the accused products with the knowledge and intention that the same will be sold in this District is sufficient to establish personal jurisdiction, as established by the evidence and allegations in the complaint. Further, both SO and Omachron admit they are subject to personal jurisdiction under 4(k)(2).

A.    **SO Has More than Minimum Contacts Sufficient for Personal Jurisdiction**

"The minimum contacts test is satisfied if a defendant 'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state.'" *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen*, 444 U.S. at 297–98). The Supreme Court held, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. When the defendant is a foreign company, it "need not itself sell the accused goods in the forum" and "need not itself manufacture the accused goods." *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701, at *3 (E.D. Tex. Sept. 6, 2023) (citing *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1232–1233 (Fed. Cir. 2010)); *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F.

Supp. 3d 291, 305-07 (W.D. Tex. 2021). And "a domestic distributor or manufacturer need not be a named defendant in the case for personal jurisdiction over the foreign defendant." *AX Wireless*, 2023 WL 7105701, at *3 (citing *Orange Elec. Co. v. Autel Intelligent Tech. Corp.*, No. 2:21-CV-00240-JRG, 2022 WL 4368160, at *1 (E.D. Tex. Sept. 21, 2022)).

After a plaintiff shows that the minimum contacts test has been met, the defendant bears the burden to prove that maintaining the suit would be unreasonable. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351–52 (Fed. Cir. 2003). "In *rare circumstances*, a defendant may defeat the exercise of personal jurisdiction by 'present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Orange Elec. Co. v. Autel Intelligent Tech. Corp.*, No. 2:21-CV-00240-JRG, 2022 WL 4368160, at *2 (E.D. Tex. Sept. 21, 2022) (quoting *Burger King*, 471 U.S. at 477).

### 1. This Court Has Routinely Held that Companies Who Call Themselves Holding Companies in the Briefing Are Subject to Personal Jurisdiction

Even so-called "holding companies" that claim not to manufacture or sell products are properly subject to personal jurisdiction where, as here, they are a foreign parent company that enjoys revenues from their subsidiaries that make and sell the Accused Products in the United States.

In *AX Wireless*, this Court found personal jurisdiction over foreign defendant Lenovo Group Limited ("LGL") even though LGL asserted "(1) it is nothing more than a holding company, (2) it does not design, manufacture, sell, or import products anywhere, and (3) non-parties, but US entities, Lenovo US and Motorola are solely responsible for importing, marketing, advertising, offering for sale, and selling Lenovo and Motorola branded products in the United States." *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701, at *1, *3 (E.D. Tex. Sept. 6, 2023) (citations omitted). This Court rejected these

arguments and held that personal jurisdiction was proper over LGL because "[a]t a minimum, the evidence creates factual conflicts that LGL (1) portrays itself and its subsidiaries as the Lenovo Group—a single global company, (2) shares executives and management teams with other entities to manufacture and distribute Accused Products in the United States, and (3) enjoys revenues from sales of Accused Products by related entities, and (4) conducts business with customers through Lenovo.com, which allows customers to purchase the Accused Products and obtain technical support." *Id.* at 4.

Similarly, in *Sportscastr* this Court found personal jurisdiction over foreign defendant Sportradar Group, a "company publicly traded on the NASDAQ Stock Exchange" that told this Court it was "merely a holding company," that its subsidiary, Sportradar AG, was the responsible for the development and servicing of the accused products, and even where that subsidiary Sportradar AG did not sell its products in Texas because a still further removed company did. *Sportscastr Inc. v. Sportradar Grp., AG*, No. 2:23-CV-00472-JRG, 2024 WL 4219252, at *1 (E.D. Tex. Sept. 17, 2024); *Sportscastr Inc. v. Sportradar Grp., AG*, No. 2:23-CV-00472-JRG, Dkt. 17, at 1, 8. However, the Court found that Sportradar Group, the alleged holding company (and its subsidiary Sportradar AG), had "placed their Accused Products in the stream of commerce," including based on evidence that "[s]everal press releases name 'Sportradar Group,' not its U.S. subsidiaries," of partnering with media and sports betting platforms. Sportscastr, 2024 WL 4219252 at *6. The Court further found that it "is not persuaded by Defendants that their U.S. subsidiaries are indispensable and necessary parties when the parent company, Sportradar Group, is already a named party in the action." *Id.* at *5.

### 2.    SharkNinja Inc. Has More Than Minimum Contacts for Personal Jurisdiction

Just as in *Ax Wireless* and *Sportradar*, SharkNinja Inc.—which alleges it is just a holding company—has more than minimum contacts for personal jurisdiction. SharkNinja Inc. is publicly listed on the New York Stock Exchange and is at the apex of the SharkNinja group of companies, which hold themselves out as a single global company, SharkNinja, and enjoys revenues from sales of Accused Products by its subsidiaries and reports those earnings in its 10K. It puts the accused products into the stream of commerce through at least its website, https://sharkninja.com/, which includes information both for investors in SharkNinja, Inc. (https://ir.sharkninja.com/overview/default.aspx) and a section where consumers can "Shop Our Brands (https://sharkninja.com/shopnow/), and further puts the accused products into the stream of commerce through its subsidiaries and distributors, including in this District. It does so through overlapping executive and management teams: SharkNinja Inc. says it ███████████ █████████████████████████████████████████ Dkt. 31 at 5, but as SO itself admits██████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ *Id.* at 6. That alone is more than sufficient for personal jurisdiction. *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701, at *4–6 (E.D. Tex. Sept. 6, 2023).

Even if SharkNinja Inc. does not itself manufacture or sell the Accused Products, that is of no moment: this Court held that "a foreign company need not itself sell the accused goods in the forum" and "also need not itself manufacture the accused goods" "[i]f the allegations or evidence support personal jurisdiction." *AX Wireless*, 2023 WL 7105701 at *3. This Court further stated that "a domestic distributor or manufacturer need not be a named defendant in the case for personal jurisdiction over the foreign defendant." *Id.* (citing *Orange Elec. Co. v. Autel Intelligent Tech. Corp.*, No. 2:21-CV-00240-JRG, 2022 WL 4368160, at *1 (E.D. Tex. Sept. 21,

2022)). In finding personal jurisdiction, this Court relied on the fact that "LGL is at the head of the Lenovo Group—including LGL … —and the Lenovo Group manufactures, sells, and distributes the Accused Products in the United States and worldwide." *Id.* at \*4. This Court also relied on the fact that "LGL specifically targets the U.S. market through corporate expansion and statements from LGL's CEO regarding U.S. strategy." *Id.* The facts are stronger here. The allegations and evidence in the complaint establish that SharkNinja, Inc. both sells the products in the forum and actively participates in distribution, and does so knowingly and intentionally.

While not necessary for personal jurisdiction, SharkNinja Inc.'s activities go much further than that: publicly-available evidence—including SharkNinja Inc.'s own statements— show that it is directly involved in making and selling the Accused Products. For example, SharkNinja, Inc. tells the world it makes products and has employees. SharkNinja, Inc.'s website it states that "[t]oday at IFA 2024, ***SharkNinja, Inc.*** (NYSE: SN), a global product design and technology company, is introducing two new vacuums with first-of-their-kind capabilities." Ex. 3 (https://sharkninja.com/new-shark-powerdetect-technology/). Moreover, although SharkNinja, Inc. tells this Court ████████████████ (Dkt. 31 at 5), it tells the world that it has multiple employees: "Elizabeth Norberg is the Chief People Officer for ***SharkNinja, Inc.***" (Ex. 4), "***SharkNinja, Inc. (NYSE: SN)***, a global product design and technology company, today announced that Adam Petrick has been named its Chief Marketing Officer" (Ex. 5), and "***SharkNinja, Inc. (NYSE: SN)***, a global product design and technology company, today announced that Patraic Reagan has been named Chief Financial Officer, effective April 22, 2024." (Ex. 6).

Further, as laid out in the complaint, SharkNinja, Inc. touted in its 2023 Annual Report that:

> **We** sell our products using an omnichannel distribution strategy that consists primarily of retail and DTC [direct-to-consumers] channels. **Our** retail channel covers brick-and-mortar retailers, e-commerce platforms and multichannel retailers, which, in turn, sell our products to the end consumers … **Our** DTC channel covers sales directly to consumers through our websites.

Dkt. 26 ¶ 22 (quoting Dkt. 26-11 at 63). The sales of the accused products in the Eastern District of Texas are examples of these touted "retail and DTC" sales. *See* Dkt. 26 ¶¶ 22, 24, 26. SO acknowledges in its Motion that "we" and "our" in the foregoing excerpt includes SharkNinja, Inc.: "Unless the context requires otherwise, (i) references to 'SharkNinja,' the 'Company,' **'we,'** 'us,' and 'our' *refer to … (b) SharkNinja, Inc.* and its consolidated subsidiaries…." Dkt. 31 at 14 (alterations in original). Additionally, as SharkNinja, Inc. admits, the 2023 Annual Report states that "SharkNinja, Inc. … distributes products throughout North America, Europe, and other select international markets."[2] Dkt. 31 at 5, n.1. This evidence in Dyson's Amended Complaint means that any supposedly contrary evidence in Defendant's affidavits should be disregarded. *See Elecs. For Imaging*, 340 F.3d at 1349 (factual conflicts must be resolved in the plaintiff's favor). This Court has held that such statements may support a finding of personal jurisdiction. *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-0134-JRG-RSP, 2017 WL 970383, at *5 (E.D. Tex. Mar. 1, 2017), report and recommendation adopted, No. 2:16-CV-134-JRG-RSP, 2017 WL 1154921 (E.D. Tex. Mar. 28, 2017).

---

[2]    SharkNinja asserts that the inclusion of "Inc." in this sentence was a typo and should be disregarded because it was amended on August 8, 2024. Dkt. 31 at 5, n. 1. But this amendment occurred after the filing of the original complaint. *Powerhouse Prods., Inc. v. Widgery*, 564 F. Supp. 2d 672, 677 (E.D. Tex. 2008) ("The court is to consider the existence of personal jurisdiction on the basis of the facts as they existed at the time the complaint was filed.").

"At a minimum, the evidence [presented in SO's Motion] creates factual conflicts" that must be drawn in Dyson's favor at this stage of the case. *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-CV-00280-RWS-RSP, 2023 WL 7105701, at *8 (E.D. Tex. Sept. 6, 2023).

**B.    SO Is Subject to Personal Jurisdiction Under 4(k)(2)**

Rule 4(k)(2) allows for personal jurisdiction over a defendant where "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." FRCP 4(k)(2).

In this case, SO—SharkNinja, Inc., Omachron Alpha Inc., and Omachron Intellectual Property Inc.—each deny they are subject to personal jurisdiction under Rule 4(k)(2). But just three days ago, in the District of Massachusetts, each of these entities *admitted* they were subject to personal jurisdiction under 4(k)(2):

> ***SharkNinja Inc., Omachron Alpha Inc., and Omachron Intellectual Property Inc. admit*** for purposes of this case only ***that they are subject to jurisdiction*** in Massachusetts ***pursuant to Fed R. Civ. P. 4(k)(2)***.

*Dyson, Inc. et al v. SharkNinja, Inc. et al.*, No. 24-cv-12373 (D. Mass.) Dkt. 9 ¶ 16. SO may argue that its admission was "for purposes of the Massachusetts case only" and limited to "jurisdiction in Massachusetts," but it does not work that way. Admitting it is subject to jurisdiction under 4(k)(2) is an admission that it is "not subject to jurisdiction in any state's courts of general jurisdiction" and that "exercising jurisdiction is consistent with the United States Constitution and laws." FRCP 4(k)(2). That admission applies equally in Texas, and the Court should find SO subject to personal jurisdiction.

**a.    The Omachron Defendants Are Properly Subject to Personal Jurisdiction**

As to the Omachron Defendants, the fact that they developed the accused products and know and intend for them to be sold in this District, is sufficient to support personal jurisdiction

14

over them because this lawsuit in Texas was entirely foreseeable. *World-Wide Volkswagen*, 444 U.S. at 297. As the Supreme Court held, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

According to the Omachron Defendants, they simply develop the accused products (Dkt. 26 ¶¶ 36–38 (quoting the Omachron Defendants' statements in related litigations)). That includes both ███████████████████████████████████████████████ ███████████████████████ Dkt. 31-21, Millman Declaration at ¶ 8. The Omachron Defendants cannot credibly argue that they develop products for SharkNinja but that a suit in Texas—where Omachron knows they are sold—is unforeseeable. *Cf. World-Wide Volkswagen*, 444 U.S. at 297. Indeed, these are "action[s] of the defendant [that are] purposefully directed toward the forum State," Texas. *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987).

As such, the Omachron Defendants are properly subject to personal jurisdiction before this Court.

### b.    There Are No Considerations Rendering Jurisdiction Unreasonable

Finally, SO has not established that this is one of the "rare circumstances, [where] a defendant may defeat the exercise of personal jurisdiction by 'present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Orange*, 2022 WL 4368160, at *2 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). And maintaining suit in this forum does not "offend traditional notions of fair play and

substantial justice" for the same reasons that this suit should not be transferred. *World-Wide Volkswagen*, 444 U.S. at 292.

* * * * * *

SO are plainly subject to personal jurisdiction in this Court, in spite of its declarations. This aspect of its Motion should be denied.

## V.    SO'S ALTERNATIVE MOTION TO TRANSFER SHOULD BE DENIED

Regarding transfer, SO has failed to establish that the District of Massachusetts is "clearly more convenient" than this Court such that Dyson's choice of forum selection should be overridden.

### A.    Legal Standard

"The plaintiff's choice of a forum is 'a paramount consideration in any determination of transfer request, and that choice should not be lightly disturbed.'" *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999) (quoting *Young v. Armstrong World Indus.*, 601 F.Supp. 399, 401 (N.D. Tex.1984) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970)). "The ultimate inquiry" in the transfer analysis "is whether the destination venue is 'clearly more convenient than the venue chosen by the plaintiff.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*")). "[T]he fact that litigating would be more convenient for that defendant elsewhere is not enough to justify transfer." *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). Indeed, "the party seeking transfer must 'clearly establish good cause for transfer based on convenience and justice.'" *In re Planned Parenthood*, 52 F.4th at 629 (quoting *Defense Distributed*, F.4th at 433). Additionally, "[t]here can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'" *Volkswagen II*, 545 F.3d at 311 (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)). In

16

considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019).

In resolving motions to transfer for convenience under 28 U.S.C. § 1404(a), the court must first determine whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If the court answers this question affirmatively, it then considers the Fifth Circuit's private and public interest factors. *Id*. The private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial case easy, expeditious, and inexpensive." *Id*. (citations omitted). The public-interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law[s] …." *Id*. These factors "are not necessarily exhaustive or exclusive." *In re Volkswagen*, 545 F.3d at 315.

### B.    Dyson's Choice of Venue Should Not be Upset

On balance, SO has failed to show that the District of Massachusetts is clearly the more convenient forum for this case. As SO argued in its opposition to Dyson's motion to transfer a previous case from the District of Massachusetts, "the overriding principle in any transfer analysis [is] the plaintiff's choice of forum" which "should be given the greatest degree of deference." *SN v. Dyson*, Dkt. 57 at 13-14. SharkNinja Inc. is a nationwide company: it says it has offices in Alabama, Arkansas, California, Tennessee, Minnesota, and Massachusetts. https://sharkninja.com/our-company

17

### 1.    Venue

Dyson does not challenge that venue is proper in the District of Massachusetts for SO based on the facts of which Dyson is currently aware, such as under Fed. R. Civ. P. 4(k)(2) as SO has recently admitted. But that means jurisdiction, and thus venue, are proper in this Court as well. This, along with SO's statement that Dyson "could have included" the patent infringement claims in the Eastern District of Texas weighs against transfer. *SN v. Dyson*, Dkt. 129 at 11.

### 2.    The Relative Ease of Access to Sources of Proof

The are two categories of evidence that are relevant to this factor: documents and physical evidence.

**Documents**. SO does not dispute that the vast majority of its relevant documents are electronically stored. *See* Dkt. 31 at 23–25. Indeed, in *SN v. Dyson*, SO has **only** produced documents in electronic form. Ex. 9 (Emerick Declaration) at ¶ 2. Thus, the location of SO's relevant documents should receive little or no weight in the transfer analysis. "When 'the vast majority of the evidence is electronic, and therefore equally accessible in either forum,' this factor bears less strongly on the transfer analysis." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up) (quoting *In re Planned Parenthood*, 52 F.4th at 630). Along these lines, the Court in *Slyde Analytics, LLC v. Zepp Health Corp.* found this factor neutral where "[defendant] has only identified electronically stored evidence in broad strokes and has not identified particular custodians or any custodial duties," where defendant has identified "non-party subsidiaries" as custodians, and where "[plaintiff] has identified documents somewhat more specifically in this district." No. 2:23-CV-00172-RWS-RSP, 2024 WL 3927228, at *2 (E.D. Tex. Aug. 22, 2024). Here, SO has only identified documents in broad strokes, and has not identified any particular custodians or custodial duties:

> Here, documents relevant to the engineering and development, marketing, sales, and finance of the accused vacuum products, including design records, manufacturing records, sales records, marketing records, communications, and revenue information, are created and maintained in Needham. Many of these documents can only be accessed by personnel with the appropriate credentials, and none of these personnel are in Texas.

*See* Dkt. 31 at 23–24 (citations omitted). Additionally, SO has identified its subsidiaries, not itself, as a custodian, but those are the same parties who SharkNinja Inc. disavowed when arguing against personal jurisdiction. Dkt. 31 at 23.

SharkNinja, Inc. ignores that it creates and stores documents related to the accused products nationwide. For example, relevant documents are likely to be found in Bentonville, Arkansas (where SO likely keeps sales documents for major retailers like Walmart). Ex. 10 (https://sharkninja.com/careers?gh_jid=4404824006). Further, relevant documents are likely to be found in Chino, California, where Shark has marketing operations. Ex. 11 (https://sharkninja.com/careers?gh_jid=4395074006). So too in in Auburn, Alabama, where SharkNinja conducts product testing. These locations are indisputably closer to Marshall than Boston.

Both Defendants likewise fail to volunteer that many of their documents are likely kept internationally. SharkNinja, Inc. is incorporated in the Cayman Islands, and the Omachron Defendants are located in Canada. *See* Dkt. 31 at 3, 8.

The *Slyde* court also held that when "evidence is readily accessible in this or any other district," this factor should be neutral. *Slyde*, 2024 WL 3927228, at *2. SO asserts that there are no custodians in this district with access to relevant documents. *See* Dkt. 31 at 23–24 (citing Dkt. 31-3 (Flynn Decl.) ¶¶ 34–37, Dkt. 31-17 (Freese Decl.) ¶¶ 5–8). But ███████████ ████████████████████ and offers no explanation for why access could not be given to those individuals. Dkt. 31 at 23-24, 27. Besides, electronically stored documents can be accessed

anywhere there is an internet connection. *See In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir.

2023). Further, and weighing heavily against transfer, the ███████████████ that SO

identified likely hold relevant documents. *See* Dkt. 31 at 27; Dkt. 31-2 (Flynn Decl.) ¶¶ 38–41.

- ███████████ is a ███████████████████████ *See* Dkt. 31-2
  (Flynn Decl.) ¶¶ 38–39. He leads investor relations activities, including maintaining
  and developing relationships with existing and potential shareholders, analysts,
  investment bankers, and the media to ensure consistent messaging to internal and
  external stakeholders." *See id.* ████████████ thus likely possesses documents
  relevant to damages.

- ███████████ is a ████████████████████ *See*
  Dkt. 31-2 (Flynn Decl.) ¶¶ 38–39. ████████████ "handles returns of products and
  refurbishment of products for resale." *See id.* ████████████ thus likely possesses
  documents relevant to damages, infringement, and potentially invalidity.

- ███████████████ is a ███████████████████ *See* Dkt.
  31-2 (Flynn Decl.) ¶¶ 38–39. ████████████ "trains retailers across the United
  States, including operational tasks for sales teams, sample orders, and daily
  maintenance, and plans retailer and tradeshow events." *See id.* ████████████
  thus likely possess documents relevant to damages, infringement, and potentially
  invalidity.

- ███████████ is a ████████████████ *See* Dkt. 31-2 (Flynn Decl.) ¶¶
  38–39. ████████████ "handles in-store service, including labor and auditing, for
  retailers across the United States." *See id.* ████████████ thus likely possesses
  documents relevant to damages, infringement, and potentially invalidity.

SO also fails to give any weight to the fact that Dyson keeps its U.S. documents in

Chicago. *See* Dkt. 31-28 (Dyson's D. Mass. Motion to Sever and Transfer) at 12 ("Dyson's only

U.S. office is in Chicago, Illinois; this is the home office for all of Dyson's U.S. witnesses, and it

is where Dyson's U.S. documents are kept."). Chicago is closer to the Marshall courthouse than

it is to the Boston courthouse. *See* Ex. 12 (showing distance from Dyson's US headquarters to

the Boston courthouse is 854 miles); Ex. 13 (showing distance from Dyson's US headquarters to

the Marshall courthouse is 781 miles).

**Physical Evidence**. SO does not expressly identify any physical sources of proof—at most, it states "The bulk of the evidence relating to the accused vacuum products is in or near Needham, Massachusetts, where SN Operating and SN Sales—the entities responsible for the development and sales of the accused vacuum products—are headquartered." Dkt. 31 at 23; *see also id.* at 23–25. This does not even disclose whether physical evidence *exists*, let alone what it may be or where it is located. Absent this specificity, the existence and location of any SO physical evidence should not be given any weight. *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). In *Def. Distributed¸* the Fifth Circuit explained: "Regarding the first private interest factor, the movant has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum."

SharkNinja, Inc. fails to mention that it keeps physical evidence related to the accused products in Auburn, Alabama, which is indisputably closer to Marshall than Boston. Ex. 9 (Emerick Decl.) ¶ 5. This evidence is particularly relevant because it is testing evidence—so it can be used to show SO's knowledge of infringement. Additionally, there are sources of proof located in this very district: the accused products found and purchased from the Walmart in Marshall, Texas. *See* Dkt. 26 at ¶¶ 24-26.

Finally, even though some of Dyson's physical evidence may be located in the United Kingdom, this should not affect the transfer analysis because there is significant international travel either way. *See Japan Display Inc. v. Tianma Microelectronics Co., Ltd.*, No. 2:20-CV-00283-JRG, 2021 WL 3772425, at *5 (E.D. Tex. Aug. 25, 2021) ("Although the Fifth Circuit and Federal Circuit apply the '100-mile rule,' the Federal Circuit stated in Genentech that the 100-mile rule should not be rigidly applied where witnesses will have to travel a significant

distance no matter where they testify." (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009))).

On balance, this factor should weigh slightly against transfer.

### 3. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Because party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards unwilling third-party witnesses." *C&J Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-cv-00079-JRG-RSP, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019). "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses [than the transferor district]." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013); *see also In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009).

SO has identified two witnesses within the subpoena power of the District of Massachusetts: former employees Jess Schroeder and Jason Thorne. Dkt. 31 at 27. And "[w]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n. 1 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-00513, 2018 WL 2329752, at *6 (E.D. Tex. May 23, 2018)). But SO has not alleged that its former employees, who may very well be cooperative allies to SO, are unwilling, ignoring the Fifth Circuit's directive that this factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *TikTok*, 85 F.4th at 360 (citing *Planned Parenthood*, 52 F.4th at 630–31).

On the other hand, there are four witnesses possessing relevant information within the subpoena power of this Court, seeing that they live in the Eastern District of Texas: ████

███████████████████████████████████████. While these individuals are associated with SharkNinja, SharkNinja Inc. professors that it has no control over them, and thus should be presumed as unwilling. The relevance of these witnesses was described above. *See* § VI.B.2. And under *HP*, non-party witnesses are presumed unwilling. 2018 WL 4692486, at *3. *See also TikTok*, 85 F.4th at 360. Further, there are former SharkNinja employees who appear to be located in or near this district, including Abhi Agarwal, SharkNinja's former VP for Global Demand Planning in Plano (https://www.linkedin.com/in/abhi-agarwal-6a56071/).

In sum: SO has identified two supposedly unwilling witnesses in the subpoena power of the District of Massachusetts, and Dyson has identified four unwilling witnesses in the subpoena power of this district. This factor should weigh against transfer.

### 4.    The Cost of Attendance for Willing Witnesses

SO identifies 13 witnesses (Dkt. 31 at 25) but makes only a bare assertion they are relevant without explaining how or why they are relevant. *Cf. In re Genentech, Inc.*, 566 F.3d at 1344 ("The petitioners have identified witnesses relevant to [topics that might be issues at trial], and the identification of those witnesses weighs in favor of transfer."). Further, SO does not show the testimony from these 13 witnesses would not be overlapping. *See Emerging Auto. LLC v. Kia Corp.*, No. 2:23-CV-00434-JRG, 2024 WL 3170398, at *8 (E.D. Tex. June 25, 2024).

On the other hand, there are Dyson witnesses with relevant information in Chicago including:

- Lindsay DelMedico - a Marketing Director with information related to the sales and marketing of the accused products.

- Jon Kellerman - a Competitive Intelligence Analyst with information related to competition and competitor intelligence.

Ex. 9 (Emerick Declaration) ¶ 4.

The Fifth Circuit has held that it is proper to consider hotel and food costs under this factor. *See Planned Parenthood*, 52 F.4th at 631. Marshall's accommodations are far less expensive than Boston's. First, hotels are far cheaper in Marshall. *See* Ex. 14 (average 3-star hotel in Boston is $331 per night while the average 3-star hotel in Marshall is $146 per night). Additionally, food is far cheaper in Marshall than in Boston. *Compare* https://www.marshalledc.org/life/cost-of-living/ (showing groceries are 30% less expensive than the national average) *with* https://www.payscale.com/cost-of-living-calculator/Massachusetts-Boston (showing groceries are 5% more expensive than the national average).

Thus, while the witnesses may incur somewhat greater costs traveling to the courthouse in Marshall than the courthouse in Boston, this factor should be neutral because lodging and food is cheaper in Marshall for Plaintiffs' witnesses.

### 5.    All Other Practical Problems that Make a Trial Case Easy, Expeditious, and Inexpensive

There are now three pending cases that include at least one of the patents that Dyson asserts in this case: this case, *Dyson v. SN II*, and *SN v. Dyson II*. Judicial efficiency would be best served by moving forward with just one case. Dyson intends to move to stay and, in the alternative, dismiss *Dyson v. SN II*. And *SN v. Dyson II* is a retaliatory declaratory judgment action that weighs against transfer at least because "[w]hen two actions that sufficiently overlap are filed in different federal courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

Of the pending cases, this case is the only one with an operable schedule. Further, Dyson and SO have already expended considerable resources litigating Dyson's patent infringement

claims in this Court. Most recently, Dyson served its infringement contentions on September 4,
2024. Additionally, this case has an operative scheduling order, Dkt. 17, as well as set dates for a
*Markman* hearing and jury selection. In one week, on October 2, 2024, the parties must file a
proposed Docket Control Order based off of the *Markman* (September 18, 2025) and jury
selection dates (March 2, 2026). In two weeks, initial and additional disclosures including
document production are due to be served by the parties. Pursuant to Section 3(b) of this Court's
model Discovery Order, both parties' production shall include "all documents, electronically
stored information, and tangible things in the possession, custody, or control of the party that are
relevant to the pleaded claims or defenses involved in this action, except to the extent these
disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of
Texas." Model Discovery Order at 3(b). Accordingly, discovery is already underway here. In
contrast, SO has refused to provide Dyson discovery related to Dyson's vacuum cleaner head
patents in Massachusetts. *See* Ex. 15 (8/22/2024 R&Os to Dyson's Second Sets of ROGs and
RFPs). Moreover, SO's proposed trial date in Massachusetts of "[o]n or about Monday, April 20,
2026, at the Court's convenience" is over a month *after* jury selection is set to begin in this
Court. *SN v. Dyson*, Dkt. 175 at 5-6. Therefore, denying SO's motion to transfer will further the
goals of making the case easy, expeditious, and inexpensive to try.

Thus, this factor weighs against transfer.

### 6. The Administrative Difficulties Flowing from Court Congestion

Dyson and SO are competitors, so this factor should be weighted heavier. *See Emerging
Auto. LLC v. Kia Corp.*, No. 2:23-CV-00434-JRG, 2024 WL 3170398, at *13 (E.D. Tex. June
25, 2024 (citing *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023)); *Planned Parenthood*,
52 F.4th at 631–32. SO admits the parties are competitors in its 2023 annual report: "SO
competes with brands including Dyson." Dkt. 26-11 at 58. It is beyond dispute that the Eastern

District of Texas offers a quicker time to trial for all cases, and for patent cases specifically. *See id.*; *In re Clarke*, 94 F.4th 502, 515–16 (5th Cir. 2024) Ex. 15 (average time to trial for all cases in EDTX: ~21 months; average time to trial in DMA: ~30 months) Ex. 16 (average time to trial in EDTX for patent cases: 24 months); Ex. 17 (average time to trial in DMA for patent cases: 35 months). Indeed, the average time to trial in patent cases is approximately nine months shorter in the Eastern District of Texas than in the District of Massachusetts.

Further, the Fifth Circuit also considers relative caseloads and "congestion" between the competing courts, which further weighs against transfer. *Planned Parenthood*, 52 F.4th at 631. For example, in *Planned Parenthood* the Fifth Circuit found that the district court's comparison of the "congest[ion]" between the competing courts was proper and affirmed the district court's determination that this "counsels against transfer." 52 F.4th at 631. Comparing the two districts, there are an average of 323 cases per judge in the Eastern District of Texas and an average of 438 cases per judge in the District of Massachusetts. Ex. 18 (open cases in E.D. Tex.: 2,585; open cases in D. Mass.: 5,691); Ex. 9 (Emerick Declaration) ¶ 6 (8 active District Court Judged in E.D. Tex.; 13 active District Court Judges in D. Mass.).

This factor therefore weighs heavily against transfer.

### 7. The Local Interest in Having Localized Interests Decided at Home

This factor should be neutral. SO points to development efforts in the District of Massachusetts to argue Massachusetts has a stronger connection to the facts of this case. Dkt. 21 at 29–30. But SO are foreign corporations, and "there is minimal local interest in the [proposed transfer district] as to the dispute between [a defendant parent] and [a plaintiff] because [the defendant parent] has no presence there other than a subsidiary which is not a party here." *Northstar Systems LLC v. Volkswagen AG*, Case No. 2:22-cv-286, Dkt. 66 at 17 (E.D. Tex. Aug. 30, 2023). Further, SO asserts the relevant subsidiaries are ████████████████

SharkNinja, Inc., meaning any localized interests in Massachusetts are minimal. Dkt. 31 at 7; *Northstar Systems*, 2:22-cv-286, Dkt. 66 at 17 (E.D. Tex. Aug. 30, 2023). Moreover, SO does not dispute the accused products are sold in the Eastern District of Texas. Dkt. 31 at 30. This factor is therefore neutral.

> **8.** **The Familiarity of The Forum with The Law That Will Govern the Case & The Avoidance of Unnecessary Problems of Conflicts of Law**

Dyson agrees with SO that these factors are neutral.

## VI.   SO SHOULD BE JUDICIALLY ESTOPPED FROM CHALLENGING JURISDICTION & VENUE IN THIS COURT

By telling the District of Massachusetts that "Dyson [] could have included its infringement claims … in the Eastern District of Texas," Shark evinced its consent to both personal jurisdiction and venue and should now be judicially estopped from challenging the same. *SN v. Dyson*, Dkt. 129 at 11 (June 10, 2024). "[W]ere a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895) (brackets removed)). Specifically, "[t]he doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) (quoting *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1142–43 (8th Cir. 1998)). *See also Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011); SO cannot tell the District of Massachusetts one thing and this Court another.

## VII.   SHARK'S REMAINING ARGUMENTS ARE MERITLESS

SO argues that Dyson has "manipulated" venue, pointing to *In re Samsung Electronics Co., Ltd.*, 2F. 4th 1371 (Fed. Cir. 2021). Dkt. 31 at 21-22. *Samsung* is inapposite. In *Samsung*,

the patent owner divided its patent enforcement rights geographically in an attempt to limit venue to the Western District of Texas: "Ikorongo Tech assigned to Ikorongo Texas exclusive rights to sue for infringement and collect past and future damages for those patents within certain specified parts of the state of Texas." No such geographic division of rights has occurred here. Dyson's choice to sue three foreign defendants in Texas is wholly unremarkable, not "manipulative," or "forum shopping," especially where those same Defendants told the Massachusetts court that "Dyson also could have included its infringement claims in its recently filed case in the Eastern District of Texas," *SN v. Dyson*, Dkt. 129 at 11, and "admit[ted] for purposes of [a different] case only that they [were] subject to jurisdiction in Massachusetts pursuant to Fed. R. Civ. P. 4(k)(2)." *Dyson v. SN II*, Dkt. 9 at ¶ 16.

SO also argues "SharkNinja branded products pre-date SN, Inc.'s May 2023 formation by nearly two decades." Dkt. 31 at 5. Putting aside that this is demonstrably false for the accused products, the products named in the Complaint are being sold and can be purchased in the Eastern District of Texas including at the Walmart in Marshall, Texas. *See* Dkt. 26 at ¶¶ 24-26.

Further, SO argues "Dyson has litigated multiple patent and other cases against SharkNinja Operating and SharkNinja Sales for a decade, but no case in Texas." Dkt. 31 at 2. Unlike SharkNinja Operating and SharkNinja Sales, SharkNinja, Inc. is a foreign corporation that was incorporated in 2023. SharkNinja, Inc. wants the benefits of being a foreign corporation without the burdens of the more expansive venue rules that apply to foreign companies.

## VIII.  IF NECESSARY, DYSON REQUESTS JURISDICTIONAL DISCOVERY

Dyson believes that SO's Motion should be denied based on the pleadings, the evidence attached to the pleadings, and the evidence submitted in connection with this Opposition. But to the extent the Court believes jurisdictional discovery would aid in its decision, Dyson requests it. *See Digital Broad. Sols., LLC v. DISH Network L.L.C.*, No. 2:22-CV-00335-JRG, 2023 WL

11805298 (E.D. Tex. Jan. 19, 2023); *see also Lifetime Brands, Inc. v. QIMA Ltd.*, No. 2:23-CV-00216-JRG, 2024 WL 896344 (E.D. Tex. Mar. 1, 2024).

## IX.    CONCLUSION

For the foregoing reasons, SO's Motion (Dkt. 31) should be denied.

DATED: September 30, 2024

Respectfully submitted,

*/s/ Jay Emerick*
Melissa R. Smith

Melissa R. Smith
(TX State Bar No. 24001351)
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Bryan Hales, P.C. (*pro hac vice*)
Jay Emerick (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: 312.862.2000
Fax: 312.862.2200
bhales@kirkland.com
jay.emerick@kirkland.com

Caitlin Dean
(TX State Bar No. 24109797)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: 212-446-4800
Facsimile: 212-446-4900
caitlin.dean@kirkland.com
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2024, the foregoing was filed electronically in compliance with Local Rule CV-5(a) and served via electronic mail on all counsel of record who have consented to electronic service.

*/s/ Melissa R. Smith*