# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

SPORTSCASTR INC.
(d/b/a PANDA INTERACTIVE),

    Plaintiff,

    v.

SPORTRADAR GROUP AG, and
SPORTRADAR AG,

    Defendants.

Case No. 2:23-cv-00472-JRG

---

## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND, IN THE ALTERNATIVE, TO TRANSFER

---

## **Table of Contents**

I.     INTRODUCTION. ........................................................................................... 1

II.    STATEMENT OF ISSUES. ............................................................................. 2

III.   FACTUAL BACKGROUND. .......................................................................... 2

IV.    LAW GOVERNING PERSONAL JURISDICTION. ...................................... 5

V.     DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION. ....... 7

    A.     There is No General Personal Jurisdiction Over Either Named Defendant -- Neither Is "Essentially At Home" In Texas................................................................... 8

    B.     Defendants Have Not "Purposefully Directed" Any Activities Towards Texas. ....... 10

    C.     PANDA's Stream-of-Commerce Theory is Fatally Flawed...................................... 13

    D.     Plaintiff's Remaining Allegations As To Jurisdiction Are Irrelevant. ...................... 15

VI.    PLAINTIFF STRATEGICALLY FAILED TO NAME NECESSARY PARTIES. ........... 16

VII.   THIS CASE SHOULD BE DISMISSED IN LIGHT OF THE FIRST-FILED DECLARATORY JUDGMENT ACTION IN DELAWARE. ........................................... 17

VIII.  IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO DELAWARE, WHERE THE DJ ACTION IS PENDING. ................................................. 20

    A.     The Private Factors Weigh In Favor Of Transfer...................................................... 21

    B.     The Public Factors Weigh in Favor of Transfer. ...................................................... 23

IX.    CONCLUSION. ............................................................................................. 24

# Table of Authorities

**Cases**

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................................................. 6, 11

*Daimler AG v. Bauman,* 571 U.S. 117 (2014) .................................................................... passim

*Endo Pharms. Inc. v. Lupin Atlantis Holdings SA*, No. 2:17-CV-00558-JRG, 2018 WL 11474182 (E.D. Tex. May 30, 2018) ............................................................................................ 22

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-CV-2049-JRG, 2016 WL 6917272 (E.D. Tex. Sept. 1, 2016) ............................................................................. 12

*Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex. 1975) ....................................... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ................................... 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................. 5

*Hoffman v. Blaski*, 363 U.S. 335 (1960) .................................................................................. 21

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-cv-26, 2009 WL 1025467 (E.D. Tex. Mar. 26, 2009) ...................................................................................................... 7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) .............. 12

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) ........................................................ 21

*In re Telebrands Corporation*, 773 Fed. App'x 600 (Fed. Cir. 2016) ......................................... 17

*In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201 (5th Cir. 2004) ................................... 20, 21

*In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304 (5th Cir. 2008) ........................... 22

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356 (Fed. Cir. 2001) ......................................................... 5

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................................................... 5, 6, 8, 10

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602 (5th Cir. 2008) ........................................ 9

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795 (E.D. Tex. 2014) .... 6, 10

*Mallinckrodt Medical Inc. v. Nycomed Imaging AS*, 49 U.S.P.Q. 2d 1474 (E.D. Mo. 1998) ...... 18

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283 (Fed. Cir. 2012) ......................................................... 18

*Mitts v. Sikorsky Aircraft Corp.*, No. Civ. A. H–10–5164, 2013 WL 12138546 (S.D. Tex. Mar. 5, 2013) ............................................................................................................... 19

*Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010) .............. 6, 11

*Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119 (8th Cir. 1985) ............................... 19

*Ortiz v. Singer*, No. CV H-16-3708, 2017 WL 2505674 (S.D. Tex. June 9, 2017)...................... 19

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001) .............. 13

*Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122 (S.D.N.Y. 2003) ................................................ 18

*PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163 (Tex. 2007) ................................ 12

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ........................................................... 21

*QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650 (E.D. Tex. 2007) ................................ 12, 14

*Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947 (5th Cir. 1997) ..................................... 18, 19

*Tapp v. Shaw Envtl., Inc.*, 401 F. App'x 930 (5th Cir. 2010) (per curiam) .................................. 19

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017) ................................ 16

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721 (5th Cir. 1985) ........................................................................................ 17

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ........................................... 14

## I.    **INTRODUCTION**.

Defendants Sportradar Group AG ("Sportradar Group") and Sportradar AG ("Sportradar AG") (Sportradar Group and Sportradar AG collectively "Defendants") hereby respectfully move the Court to dismiss this action for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and, in the alternative, to transfer under 28 U.S.C. § 1404.  Not only does Plaintiff Sportscastr, Inc.'s ("Plaintiff" or "PANDA") Amended Complaint (ECF No. 17) fail to allege sufficient facts to support a *prima facie* showing of personal jurisdiction, but it also does not and cannot establish the requisite "minimum contacts" with the State of Texas to support personal jurisdiction as neither Defendant is incorporated, headquartered, or otherwise "at home" in Texas. Defendant Sportradar Group is a foreign holding company and Defendant Sportradar AG is a foreign company – neither of which has undertaken any activities in, or directed any activities at, Texas, let alone in the Eastern District of Texas.

Plaintiff intentionally decided to file its original Complaint against only Sportradar Group. Then, when facing a meritorious Motion to Dismiss, Plaintiff amended its Complaint to selectively add only foreign entity Sportradar AG -- as opposed to any of the known and necessary U.S. Sportradar subsidiaries that comprise the entities that are openly and actively involved with the Accused Products in the United States. Naming only Sportradar Group and Sportradar AG as defendants is nothing more than an obvious attempt to avoid dismissal for improper venue.  There is no doubt that Plaintiff appreciates that venue would be *improper* in this forum had it properly named any one of the necessary U.S. Sportradar subsidiaries as defendants, since, as noted below, none have a regular and established place of business in the Eastern District of Texas.

Importantly, prior to Plaintiff's Amended Complaint, non-parties Sportradar US LLC and Sportradar Solutions LLC, as well as newly-added Defendant Sportradar AG, filed a Declaratory Judgment action in the District of Delaware, a court that indeed does have jurisdiction over all the

necessary parties.[1] The Delaware action is the first-filed lawsuit, and the first-to-file rule applies, as this Court lacked and lacks jurisdiction over Defendant Sportradar Group -- the only named defendant in the original action.  As such, the Court should dismiss this action in light of the first-filed Delaware case.  Additionally, as the U.S. subsidiaries named in the first-filed Delaware lawsuit are necessary parties to allegations regarding the Accused Products, Defendants respectfully move, in the alternative, to transfer this action to the District of Delaware where it may be consolidated with that action.

## II.   STATEMENT OF ISSUES.

This Motion demonstrates the following:

(1) That this Court lacks personal jurisdiction over Defendant Sportradar Group;

(2) That this Court lacks personal jurisdiction over Defendant Sportradar AG;

(3) That, even if the Court holds that it has personal jurisdiction only over Defendant Sportradar AG, the case should be dismissed or transferred pursuant to the first-to-file rule and the earlier-filed case *Sportradar US LLC et al. v. Sportscastr, Inc.*; and

(4) That, even if the Court holds that it has personal jurisdiction over both Defendants, this case should nevertheless be transferred to the District of Delaware for consolidation with the case *Sportradar US LLC et al. v. Sportscastr, Inc.*

## III.   FACTUAL BACKGROUND.

Plaintiff PANDA filed its original Complaint on October 5, 2023, alleging that only Sportradar Group infringed and was infringing upon certain claims of U.S. Patent Nos. 10,805,687 (the "'687 Patent"), 11,039,218 (the "'218 Patent"), and 10,425,697 (the "'697 Patent").  *See, e.g.*, ECF No. 1, ¶ 16.   The original Complaint accused certain alleged "video stream products" of

---

[1]  *Sportradar US LLC et al. v. Sportscastr, Inc.*, C.A. No. 24-170 (D. Del.) (Filed Feb. 8, 2024).

infringement including "Sportradar emBet, Sportradar OTT, and Sportradar Live Channel Trading (LCT)." *Id.*, ¶ 17. In response, Defendant Sportradar Group filed a Motion to Dismiss the original Complaint on February 9, 2023 (ECF No. 11). Instead of challenging Sportradar Group's Motion to Dismiss, Plaintiff filed an Amended Complaint on March 8, 2024, adding Sportradar AG as a Defendant, adding allegations of infringement of a fourth patent, U.S. Patent No. 11,871,088 (the "'088 Patent"), and failing to name either of the two U.S. entities that actually market and sell the accused products in the United States. *See* ECF No. 17.

The original defendant, Sportradar Group, is a Swiss company with headquarters in St. Gallen, Switzerland and no connections with Texas. Declaration of Brandon McGarry ("McGarry Dec.") ¶¶ 5, 9-11. Sportradar Group, as a holding company, does not provide any products. *Id,* ¶¶ 6-7. Independent subsidiaries of Sportradar Group, to which Sportradar Group has arms-length relationships, separately provide the services accused of infringement to each subsidiary's respective customers. *Id.* ¶ 8. Further, Sportradar Group does not maintain headquarters, offices, facilities, or any other physical structures or real property in Texas. *Id.* ¶ 10. Nor is it registered to do business in Texas, does not operate in Texas, does not have employees in Texas, and does not maintain any documents and/or records in Texas. *Id.* ¶ 11.

The newly-added defendant, Sportradar AG, is a Swiss company with its headquarters in St. Gallen, Switzerland. McGarry Dec. ¶ 31. Sportradar AG is an indirect subsidiary of Defendant Sportradar Group. *Id.* ¶ 32. Sportradar AG does not maintain headquarters, offices, facilities, or any other physical structures or real property in Texas. *Id.* ¶ 34. Sportradar AG is not registered to do business in Texas, does not operate in Texas, and does not have any employees in Texas, or maintain any documents and/or records in Texas. *Id.* ¶ 35. Sportradar AG is the entity responsible for the creation, development, maintenance, and servicing of the accused emBET, OTT, and LCT

products.  *Id.* ¶ 33.

An entity Plaintiff PANDA, apparently intentionally, failed to name in either its original or Amended Complaint is Sportradar US LLC ("Sportradar US"), a Delaware LLC which is a subsidiary of Sportradar Americas, Inc.[2] (a subsidiary of Defendant Sportradar AG).  McGarry Dec. ¶¶ 12-13.  Sportradar US offers for sale and sells the Accused Product Sportradar OTT ("OTT").  *Id.* ¶ 14.  Sportradar US also markets the Accused Product Sportradar emBET ("emBET").  *Id.* ¶ 14.  Sportradar US enters into certain contracts in the U.S., including contracts for sales of OTT.  *Id.* ¶ 15.  While Sportradar US was previously registered to do business in Texas (Texas Tax ID #32066817738), it is not presently registered to do so. *Id.* ¶ 17.  Sportradar US does not maintain headquarters, offices, facilities, or any other physical structures or real property in Texas.  *Id.* ¶ 19.  PANDA's decision not to add Sportradar US as a defendant likely stems from the fact that, as a Delaware company with no connection to Texas, venue would be improper in this court.

Another entity Plaintiff PANDA intentionally chose not to name in either the original or amended complaint is Sportradar Solutions LLC ("Sportradar Solutions"), a Delaware LLC and also a subsidiary of Sportradar Americas, Inc.  McGarry Dec. ¶¶ 21-22.  Sportradar Solutions enters into certain contracts in the U.S., including contracts for sales of the Accused Product Sportradar Live Channel Trading ("LCT").  *Id.* ¶¶ 23-24.  Sportradar Solutions is the entity that will contract for sales of the accused emBET product in the U.S.  *Id.* ¶ 24. Sportradar Solutions does not maintain headquarters, offices, facilities, or any other physical structures or real property in Texas. *Id.* ¶ 25.  Sportradar Solutions is not registered to do business in Texas, does not operate

---

[2]    Sportradar Americas Inc. is a Delaware company.  McGarry Dec. ¶ 28.  Sportradar Americas Inc. was previously registered to do business in Texas (Texas Tax ID #32086480749).  *Id.* ¶ 30.

in Texas, does not have employees in Texas, and does not maintain documents and/or records in Texas.  *Id.* ¶ 26.  Again, PANDA has intentionally chosen to omit a relevant party because, as a Delaware company with no connection to Texas, venue would be improper.

## IV.   LAW GOVERNING PERSONAL JURISDICTION.

"Determining whether personal jurisdiction exists … involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001).[3]  Because Texas's long-arm arm statute is coterminous with the extent of personal jurisdiction permitted by due process, the "two inquiries collapse into a single inquiry: whether jurisdiction comports with due process."  *Id.* at 1360.  Under considerations of due process, jurisdiction is appropriate where the defendant has at least "minimum contacts" with the forum state.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A state may exercise personal jurisdiction over a defendant having minimum contacts either through general jurisdiction or specific jurisdiction.

General personal jurisdiction exists when the defendant's contacts are unrelated to the cause of action but are "continuous and systematic."  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  To be subject to general jurisdiction, a nonresident or foreign corporation must engage in "continuous corporate operations within a state" that are "so substantial and of such a nature as to justify suits against it on causes of action arising from dealings entirely distinct from those activities."  *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014) (quoting *Int'l Shoe*, 326 U.S. at 318).  The corporation's "affiliations with the State [must be] so 'continuous

---

[3]   Federal Circuit law governs the question of whether a particular district court may exercise personal jurisdiction over a defendant in a patent case.  *Inamed Corp.*, 249 F.3d at 1359.

and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 138-39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (second alteration in original). Being "essentially at home" requires a presence in the forum state that is equivalent to being incorporated or headquartered there. *Daimler*, 571 U.S. at 138-139 & n.19. None of the facts here support the exercise of general personal jurisdiction over either Defendant Sportradar Group or Sportradar AG.

Unlike general personal jurisdiction, specific personal jurisdiction exists only in disputes that "arise out of or are connected with the activities within the state." *Int'l Shoe*, 326 U.S. at 319. The exercise of specific jurisdiction is reasonable if the defendant "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). One method of demonstrating "purposeful direction" is the stream-of-commerce theory, where a defendant purposefully avails itself of a forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1233 (Fed. Cir. 2010) (alterations in original). As this Court has observed, "the Federal Circuit has summarized the Supreme Court's guidance regarding the due process requirement for establishing specific jurisdiction as follows: The plaintiff bears the burden of showing (1) that the defendant purposefully directed its activities at residents of the forum, and (2) that the plaintiff's claim arises out of or relates to those activities." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 804 (E.D. Tex. 2014). Again, Plaintiff PANDA cannot establish and has failed to credibly allege that Sportradar Group or Sportradar AG purposefully directed any activities at residents of this forum, as neither have, or that plaintiff's claims arise out of any such activities,

as they do not.

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, as Defendants do here, the plaintiff bears the burden of establishing that personal jurisdiction exists. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-cv-26, 2009 WL 1025467, at *3 (E.D. Tex. Mar. 26, 2009) ("When a defendant challenges personal jurisdiction, the plaintiff bears the burden of proof on the issue."). Plaintiff PANDA cannot meet its burden and this case should be dismissed.

## V.   DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION.

For general personal jurisdiction, neither Sportradar Group nor Sportradar AG have the "continuous and systematic" and "substantial" contacts with either this forum or Texas to render either "essentially at home" and to support the exercise of personal jurisdiction. For specific personal jurisdiction, Defendant Sportradar Group has not purposefully directed its activities at this forum's residents. Even under the stream-of-commerce theory of purposeful direction advanced by Plaintiff (and assuming, *arguendo*, the Accused Products somehow allegedly made their way to Texas, which no facts evidence), the facts still do not support specific personal jurisdiction as to at least Defendant Sportradar Group as it is not an entity that "deliver[ed] its products into the stream of commerce." Bluntly, Plaintiff initially sued the wrong entity and now, in its Amended Complaint, has doubled down on its strategy by naming a second defendant upon which this Court lacks jurisdiction.[4] As for Defendant Sportradar AG, Plaintiffs allegations merely

---

[4]   That Plaintiff has sued the wrong entities is supported by Plaintiff's own Complaint, which alleges that "Sportradar has been actively involved in lobbying for gambling to be legalized in the State of Texas." ECF No. 1, ¶ 30. The news article cited by Plaintiff quotes Brandt Iden, the former Head of Government Affairs for a non-party, different entity that PANDA intentionally chose not to include in its Amended Complaint -- ***Sportradar Solutions***. Mr. Iden was never employed by Defendant Sportradar Group and is no longer affiliated with Sportradar Solutions. McGarry Dec. ¶ 44.

parrot legal conclusions and lack any factual allegations that support the contention that the allegedly infringing products actually reached Texas consumers.

A.     **There is No General Personal Jurisdiction Over Either Named Defendant -- Neither Is "Essentially At Home" In Texas.**

To be subject to general personal jurisdiction, a non-resident corporation must engage in "substantial" and "continuous corporate operations within a state." *Daimler*, 571 U.S. at 127 (quoting *Int'l Shoe*, 326 U.S. at 318). Defendant Sportradar Group has neither. Defendant Sportradar Group is a Swiss company with its headquarters in St. Gallen, Switzerland. McGarry Dec. ¶ 5. Similarly, Defendant Sportradar AG is a Swiss company with its headquarters in St. Gallen, Switzerland. McGarry Dec. ¶ 31. Neither Defendant maintains headquarters, offices, facilities, or any other physical structures or real property in Texas. *Id.* ¶¶ 10, 34. Nor does either Defendant operate in Texas, have employees in Texas, or maintain documents and/or records in Texas. *Id.* ¶¶ 11, 35. Defendant Sportradar Group is merely a holding company. Its independent subsidiaries, or subsidiaries of its subsidiaries, are the entities responsible for any alleged creation, development, servicing, offers for sales, and sales of the Accused Products. *Id.* ¶¶ 6-8. Sportradar Group has not shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the Accused Products (or any other products) in Texas. *Id.* ¶ 9. And while the newly named defendant, Sportradar AG, was or is involved in the creation and development of the Accused Products, it has not made, used, imported, offered for sale, sold, and/or advertised the Accused Products (or any other products) in Texas. *Id.* ¶ 36. There is no legitimate question of fact; neither Defendant has the requisite continuous and substantial operations in Texas (or indeed any operations in Texas) to support general personal jurisdiction.

Plaintiff appears to recognize this defect, as its own summary of its allegations, contending only that newly-named Defendant Sportradar AG "***does business in Texas***." ECF No. 17, ¶ 33.

But that assertion is both false and insufficient to support general personal jurisdiction even if true. The contacts and activities required to support general personal jurisdiction must be equivalent to being headquartered or incorporated in the forum state – the act of merely doing business in the forum state, which neither Sportradar Group nor Sportradar AG even do, is insufficient. *See Daimler*, 571 U.S. at 138-39 ("[T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.") (second alteration in original); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008) ("[W]e emphasized that in order to confer general jurisdiction a defendant must have a business presence *in* Texas. ... It is not enough that a corporation do business *with* Texas.").

Plaintiff's similarly unsupportable and false allegations regarding Defendants' supposed "recruitment and employment of citizens of Texas in this forum" (ECF No. 17, ¶ 32), are also insufficient to support general personal jurisdiction.   Neither named Defendant has a single US- or Texas-based employee.[5]  McGarry Dec. ¶¶ 11, 35.  Plaintiff's supposed evidence to the contrary is a single "exemplary" alleged job posting.  ECF No. 17, ¶ 33.[6]  Unfortunately for Plaintiff, that posting was not for employment with either Defendant, nor was either Defendant involved in the posting.  This is because the ad identified by Plaintiff was for a position at a different company,

---

[5]   While neither named Defendant has any Texas-Based employees, an entity Plaintiff intentionally elected not to name as a defendant, Sportradar US, has approximately 13 remote employees in Texas (out of approximately 501 total employees), none of which are employees of either Defendant nor are they involved with the Accused Products.  McGarry Dec. ¶ 18.

[6]   Setting aside the insufficiency of Plaintiff's allegations, Plaintiff alleges that jurisdiction is appropriate "due at least to [Defendant's] recruitment and employment of citizens of Texas *in this forum*." ECF No. 17, ¶ 32 (emphasis added).  But the screenshot of the job listing has a (remote) location of San Antonio, Texas, which is located in the Western District of Texas, not this forum.

Synergy Sports Technology LLC.[7]  McGarry Dec. ¶ 41.  Moreover, that posting did not even specifically target Texas as it was for a fully remote position (as reflected in the very screenshot Plaintiff relies upon and, consistently, was advertised in numerous jurisdictions including New York, Utah, Florida, Wisconsin, North Carolina, Ohio, and Michigan.).  *Id.*  Additionally, the posting also was not related to the development or sales of the Accused Products, but rather was for the development of internal tooling and processes – the ad simply does not and cannot support the exercise of specific personal jurisdiction over either named defendant.  *Id.*

Furthermore, Plaintiff's suggestion that a single job posting might subject any entity[8] to general personal jurisdiction (let alone either Defendant, where neither was involved in the posting), equivalent to being "essentially at home" in Texas, is not only illogical, it is not the law.  *See Loyalty Conversion Sys. Corp.*, 66 F. Supp. 3d at 805-807 (finding no general jurisdiction where defendant had a remote employee based in Texas and did business with Texas residents); s*ee also Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

Plaintiff's Complaint wholly fails to allege sufficient facts to support subjecting either Defendant to general personal jurisdiction in this forum.

## B.  Defendants Have Not "Purposefully Directed" Any Activities Towards Texas.

There is no basis to find specific personal jurisdiction over either named defendant.  Unlike general personal jurisdiction, specific personal jurisdiction exists only in disputes that "arise out of or are connected with the activities within the state." *Int'l Shoe*, 326 U.S. at 319.  The exercise

---

[7] Synergy Sports Technology LLC is a subsidiary of Atrium Sports Inc., which is a subsidiary of newly-added Defendant Sportradar AG.  McGarry Dec. ¶ 38.

[8] In its Amended Complaint, Plaintiff defined "Sportradar" to refer collectively to the Defendants Sportradar Group AG and Sportradar AG and not any other entities.

of specific jurisdiction is reasonable if the defendant "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to those activities.'" *Burger King*, 471 U.S. at 472 (citation omitted).  One method of demonstrating "purposeful direction" is the stream-of-commerce theory, wherein a defendant purposefully avails themselves of a forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." *Nuance*, 626 F.3d at 1233 (alterations in original).  No such facts exist here as to either Defendant.

Defendant Sportradar Group does not "deliver" any products or services and, further, is not responsible for "delivering … products" into any U.S. stream of commerce.  McGarry Dec. ¶¶ 7, 9. Further, as stated above, newly named defendant Sportradar AG is the entity responsible for the creation, development, maintenance, and servicing of the Accused Products, but does not offer for sale or license the Accused Products in Texas.  McGarry Dec. ¶¶ 33, 36.  An entity Plaintiff elected not to name as a defendant, Sportradar US, markets and sells the accused OTT product on behalf of Sportradar AG.  *Id.* ¶ 14.  Another entity Plaintiff elected not to include as a party, Sportradar Solutions, sells the accused LCT product in the U.S.  *Id.* ¶ 23.  Sportradar US also markets the accused emBET product in the U.S. and Sportradar Solutions is the entity that will enter into contracts for sales of emBET in the U.S.  *Id.* ¶¶ 14, 24.  Importantly, defendant Sportradar Group does not make, use, offer for sale, or sell any of the Accused Products, nor does it provide or sell the Accused Products to its subsidiaries for later distribution.  *Id.* ¶¶ 7, 9.

Plaintiff attempts to overcome the lack of jurisdiction by contending that Sportradar AG's actions (which are themselves insufficient as discussed below) should be attributed to Sportradar Group based upon the allegations that "Sportradar Group exercises control over Sportradar AG by directing it to develop the Accused Products and to cause the Accused Products to be made, sold,

and offered for sale, and/or imported in the United States," Sportradar AG "is owned by" Sportradar Group AG, and "the profits Sportradar AG receives from these acts flow back to Sportradar Group." ECF No. 17, ¶ 26. But Plaintiff's allegations are completely unsupported and, even if true, are insufficient to attribute any Sportradar AG actions to Sportradar Group. "For an agency relationship to permit imputation of contacts, the parent company's control over the agent must pervade the agent's dealings with the forum." *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-CV-2049-JRG, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016) ) (citing *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 532 (5th Cir. 2014)). And "[t]o impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred that the two become one.'" *See Fellowship Filtering Techs.*, 2016 WL 6917272, at *2 (citing *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007). "[T]he typical corporate relationship between a parent and subsidiary, including one hundred percent stock ownership and identity of directors and officers, is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory." *Id.*; *see also PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007) ("[A] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." (quoting *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975))). Plaintiff has not alleged even that much, as it cannot – instead, it alleges only that Sportradar Group owns Sportradar AG and, with no substantiating evidence, that Sportradar Group purportedly directs Sportradar AG to make the Accused Products and sell them in the United States (notably, not specifically Texas) and that it receives the profits from these unsubstantiated acts. But even if Plaintiff could establish any such facts, which it

cannot, they do not reach the level of "perva[sive]" control or "blurr[ing]" of corporate formalities to support attribution under an agency or alter ego theories.  Defendant Sportradar Group's role as a mere foreign holding company is wholly insufficient to establish jurisdiction.

### C.     **PANDA's Stream-of-Commerce Theory is Fatally Flawed**.

Putting aside Plaintiff's lack of any evidence demonstrating that either Defendant has the requisite contacts to support personal jurisdiction, Plaintiff's allegations fail to make even a *prima facie* showing as to its stream of commerce theory.

Plaintiff's Complaint explicitly relies upon a stream-of-commerce theory in an attempt to demonstrate Defendants' alleged purposeful direction.  ECF No. 17, ¶ 34.  But Plaintiff's allegations are nothing more than a recitation of legal boilerplate; they fail to support jurisdiction.  Paragraph 34 of the Complaint merely, in a conclusory fashion, restates the standard for finding specific personal jurisdiction under a stream-of-commerce theory.  *See id.*  And the "example" provided simply concludes, without <u>any</u> factual support, that Defendants allegedly provide "services that practice the system and methods."  *Id.*  Plaintiff fails to identify who used the allegedly infringing systems, how they are purportedly available in the jurisdiction, or provide any other requisite detail.[9]  "[T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  Here, Plaintiff has failed to provide any facts by which this Court could weigh the merits of its allegations as to personal jurisdiction, and its legal conclusions should be given no weight.  When compared to the fact that Defendants have no

---

[9]     Paragraph 28 refers to Defendant Sportradar Group's allegedly "significant contacts with this District," but the Complaint deficiently refers only to the singular, irrelevant, job posting by a different entity in San Antonio (*id.*, ¶ 27) and "Sportradar's" alleged lobbying efforts in Texas (*id.,* ¶ 30).  Moreover, neither reference involve the sale or use of any of the Accused Products.

connections with Texas and that Sportradar Group has no role in the creation, development, maintenance, servicing, marketing, offering for sale, or selling of the Accused Products, Plaintiff's conclusory and threadbare allegations merit dismissal.

Additionally, the stream-of-commerce theory Plaintiff relies upon requires that the Accused Products actually reach Texas – which facts are absent here. "[A]n exercise of personal jurisdiction under the stream-of-commerce theory is only appropriate where the allegedly infringing product reaches the forum." *QR Spex*, 507 F. Supp. 2d at 658. Outside of Plaintiff's conclusory argument in Paragraph 34, the Amended Complaint fails to allege or identify any evidence as to this critical point. Plaintiff's Amended Complaint appears to acknowledge this fatal flaw when it alleges that the Accused Products are used "by persons ***residing in*** Texas" (as opposed to being used "in Texas") (ECF No. 1, ¶ 30) and, in an attempt to overcome the glaring omission, acknowledges that the Accused Products are not used in Texas, but purportedly in neighboring states (*id.*). Even if true, the additional fact that neighboring states have legalized gambling is wholly irrelevant to the jurisdictional analysis. The "stream of commerce" theory only supports jurisdiction "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers ***in the forum State***." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (emphasis added). That Texas residents might, hypothetically, travel to another State, as Plaintiff speculates, and utilize the Accused Products in a state *other than Texas*, does not grant Texas a jurisdictional interest. *See id.* at 299 ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State.").

Additionally, Plaintiff's far-reaching speculation that Texas residents may illegally use the

Accused Products outside of Texas "to place sports wagers" (ECF No. 1, ¶ 31) is wholly unsupported, as is its baseless claim that Defendants "intend for residents of Texas to use their Accused Products … in contravention of state law" (*id.*). Plaintiff's allegations require that the Court make multiple unfounded leaps to conjure facts to generate tenuous relevancy. The Accused Products are not synonymous with or required for sports gambling. Indeed, Plaintiff's allegation makes clear why Texas ***does not*** have personal jurisdiction over this matter, if the only use that can be conjured up is a hypothetical and unknown illegal use outside of Texas.

###### D.    Plaintiff's Remaining Allegations As To Jurisdiction Are Irrelevant.

In addition to the foregoing insufficient and inaccurate allegations, Plaintiff includes several other allegations in the "Jurisdiction & Venue" section of its Amended Complaint. Not only do these allegations fail to support personal jurisdiction or venue, they are also irrelevant. That a Sportradar entity entered into "data partnerships" with various U.S. sports leagues none of which are alleged to reside in Texas) (ECF No. 17, ¶ 35), and entered into "streaming and broadcast agreements" with "networks and broadcasters" [10] (none of which are alleged to reside in Texas) (ECF No. 17, ¶ 38), and that various professional and collegiate sports teams are located in Texas and this District (ECF No. 1, ¶¶ 39-40), does not and cannot provide any necessary facts to establish that Defendants have the requisite contacts with Texas to support either general or specific personal jurisdiction. And to the extent that Plaintiff argues that any such contracts and partnerships are material and relevant, many of those contracts are signed by non-parties Sportradar U.S. or Sportradar Solutions, who Plaintiff failed to accuse in its Amended Complaint

---

[10]   To the extent a Sportradar entity contracts to provide "streaming" services, it is non-party Sportradar US -- <u>not</u> either named Defendant -- that is the signatory to such contracts. McGarry Dec. ¶ 16. To the extent Plaintiff argues that those contracts represent material evidence and facts, it reinforces the fact that Plaintiff has failed to include the correct and necessary parties in its Amended Complaint in a misguided effort to proceed in this forum.

despite having been made aware of that fact via at least Defendant Sportradar Group's previous motion to dismiss. *See* McGarry Dec. ¶¶ 16, 24.

Plaintiff's bald allegations do not support that Texas or this Court has personal jurisdiction over Defendants Sportradar Group and Sportradar AG.

## VI.    PLAINTIFF STRATEGICALLY FAILED TO NAME NECESSARY PARTIES.

Relying upon § 1391(c), Plaintiff alleges that venue is proper as to the two named defendants because they are foreign entities that do not reside or have regular and established places of business in Texas or the United States. ECF No. 17, ¶ 31.[11]  Importantly, § 1391(c) specifically notes that the joinder of a defendant "shall be disregarded in determining where the action may be brought with respect to other defendants."  28 U.S.C. § 1391(c)(3).  This is particularly relevant because two necessary parties (Sportradar US and Sportradar Solutions) that Plaintiff failed to name in this case, but which are named in the Declaratory Judgment action in Delaware, are resident in the United States and offer to sell or sell the Accused Products (unlike either Defendant here).  And, pursuant to 28 U.S.C. § 1400(b) and *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017), those entities reside in Delaware. McGarry Dec. ¶¶ 12, 21.

Plaintiff has been aware of these facts since at least as early as February 9, 2024, when Defendant Sportradar Group filed its Motion to Dismiss Plaintiff's original Complaint.  ECF No. 11 at 14.  Plaintiff's intentional decision to amend and add Defendant Sportradar AG -- and not sue the necessary U.S. companies that actually offer for sale and sell the Accused Products --

---

[11]   Plaintiff also alleges, on information and belief, that Defendants have "committed acts of infringement within this District," (ECF No. 1, ¶ 25) but since it does not allege (and cannot truthfully allege) that Defendant has a "regular and established place of business" in this District, that unsupported allegation is irrelevant as to venue under 28 U.S.C. § 1400(b).

appears to have been done solely for the purpose of forum shopping, as Plaintiff itself has no tie to Texas (being a Delaware business with no other alleged connection to Texas, ECF No. 1, ¶ 22). Indeed, PANDA, Sportradar US, and Sportradar Solutions, are all incorporated in Delaware, reflecting that Delaware is the most appropriate and logical venue to decide this dispute. Plaintiff's reliance on the catch-all venue provision speaks to gamesmanship and, had the Amended Complaint properly named the necessary entities actually involved in making, using, offering for sale, and selling the Accused Products in the United States, venue would be improper in this forum.

## VII.   THIS CASE SHOULD BE DISMISSED IN LIGHT OF THE FIRST-FILED DECLARATORY JUDGMENT ACTION IN DELAWARE.

As set forth herein, as the Court lacks personal jurisdiction over Defendants Sportradar Group and Sportradar AG, this case should be dismissed. And, even if the Court finds that it lacks personal jurisdiction only over Sportradar Group (which the facts overwhelmingly support), but has personal jurisdiction over Sportradar AG, the earlier-filed Delaware Declaratory Judgment action was the first-filed case – as it predates Plaintiff's Amended Complaint, and this case should either be dismissed or transferred to Delaware.

The Delaware action was filed on February 8, 2024. *Sportradar US LLC et al. v. Sportscastr, Inc.*, C.A. No. 24-170 (D. Del.), ECF No. 1. Plaintiff did not file its Amended Complaint until one month later, on March 8, 2024. ECF No. 17. As such, the Delaware Declaratory Judgment action was the first-filed case. The first-to-file rule "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases" and where "the overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues." *In re Telebrands Corporation*, 773 Fed. App'x 600, 602 (Fed. Cir. 2016) (citing *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 730 (5th Cir. 1985)); *see also Save Power*

*Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

Other courts considering the question of whether a complaint naming the correct parties is filed in a different jurisdiction (such as the Delaware action here) "before" an amended complaint that names one or more new defendants is filed (e.g. Plaintiff's Amended Complaint) have held that the first action filed with the correct parties is the first-filed case. *Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122, 131-32 (S.D.N.Y. 2003) (amended complaint filed after a declaratory judgment complaint that did not relate back to the filing of the original complaint with respect to newly added parties is treated as the second-filed complaint); *Mallinckrodt Medical Inc. v. Nycomed Imaging AS*, 49 U.S.P.Q. 2d 1474 (E.D. Mo. 1998) (declining to relate an amended complaint back for first-to-file purposes where the only defendant in first complaint was dismissed for lack of personal jurisdiction and where the "undisputed facts suggest that Mallinckrodt did not make a mistake within the meaning of Rule 15(c) but proceeded as it did as a strategic act").

Plaintiff's Amended Complaint cannot relate back to its original Complaint as it added an entirely new party. An amended complaint only relates back to the original pleading and original party where "the amendment changes the party or the naming of the party against whom a claim is asserted … and if, … the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). "The Fifth Circuit has interpreted Rule 15(c)(1)(C) to refer 'only to substituting or changing a defendant rather than adding a new defendant,' except in instances involving misnomer of a defendant." *Ortiz v. Singer*, No. CV H-16-3708, 2017 WL

2505674, at *2 (S.D. Tex. June 9, 2017) (quoting *Mitts v. Sikorsky Aircraft Corp.*, No. Civ. A. H–10–5164, 2013 WL 12138546, at *3 (S.D. Tex. Mar. 5, 2013); *Tapp v. Shaw Envtl., Inc.*, 401 F. App'x 930, 932 (5th Cir. 2010) (per curiam)). "Rule 15(c)(1)(C) does not apply if a plaintiff knows when the complaint was first filed who the added defendants were and what their involvement in the case was." *Id.* at *2.

Rule 15(c)(1)(C) simply does not apply here. Plaintiff's original complaint clearly and only named Defendant Sportradar Group as the sole defendant. ECF No. 1 at 1. In its Amended Complaint, Plaintiff for the first time added and named a different entity, Sportradar AG. As Plaintiff's Amendment does not relate back to the date of the original Complaint, the Delaware action is the first-filed action.

To determine whether the first to file rule applies, "the crucial inquiry" is substantial overlap. *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). Given that the two cases involve an overlapping party – Sportradar AG (and indirect subsidiaries thereof), the same patents[12], and the same accused products, there can be little doubt of "substantial overlap." This is made clearer by Plaintiff's own motion to dismiss Defendant Sportradar AG's action in Delaware where it contends that the cases should be consolidated or the Delaware action dismissed under the same first to file rule. *See Sportradar US LLC et al. v. Sportscastr, Inc.*, C.A. No. 24-170 (D. Del.), ECF No. 11.

Absent compelling circumstances, "the first court in which jurisdiction attaches has priority to consider a case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). Moreover, as addressed above, jurisdiction also could not have attached based on the original

---

[12] Both this case and the Delaware action involve the three originally named patents. Plaintiff's Amended Complaint adds a fourth related patent.

Complaint as Sportradar Group is not subject to personal jurisdiction in this Court.  Accordingly, under any analysis, the Delaware action is the first-filed action.  Nor are there compelling circumstances that compel this Court to retain jurisdiction.  As discussed below, the *Volkswagen* factors support a transfer and Texas has no specific interest in this case, whereas both the Plaintiff and the necessary Sportradar domestic subsidiaries all specifically availed themselves of Delaware's jurisdiction.  There is no compelling reason to maintain the action here in light of these facts.

## VIII.  IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO DELAWARE, WHERE THE DJ ACTION IS PENDING.

Under 28 U.S.C. § 1404(a), a Court may transfer an action based on "the convenience of parties and witnesses" to "any other district or division where it might have been brought."  Should, *arguendo,* the Court determine that it has jurisdiction over the two named Defendants, Defendants respectfully move the Court under § 1404(a) to transfer this action to the District of Delaware and/or to order this case consolidated with the declaratory judgment action filed there.

In applying § 1404(a), the first determination is whether the judicial district to which transfer is sought is one where the action could have been filed initially.  *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004).[13]  If the Court somehow finds that Defendants Sportradar Group and Sportradar AG are subject to personal jurisdiction in Texas under Plaintiff's stream-of-commerce, agency, or alter/ego theories, this action also could have been initially filed in Delaware – and, indeed, both Sportradar US and Sportradar Solutions are incorporated in Delaware.  McGarry Dec. ¶¶ 12, 21.  And, as both named Defendants here are foreign to the United

---

[13]  When addressing motions under § 1404, which do not involve substantive issues of patent law, the Court applies the law of the regional circuit court in which the Court sits. *See, e.g.*, *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

States, under 28 U.S.C. § 1391(c)(3) venue is proper in any judicial district, so this threshold requirement is met.

After the threshold inquiry is resolved, Courts analyze various public and private factors. *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009). "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A.    **The Private Factors Weigh In Favor Of Transfer.**

The first factor - the relative ease of access to sources of proof –weighs in favor of transfer. As noted before, none of the parties are located in Texas.  McGarry Dec. ¶¶ 5, 10, 12, 19, 21, 24, 30, 33.  Neither Defendant nor any other relevant "Sportradar" entity stores information or documents in Texas. *Id.* ¶ 11, 20, 25-26, 34.  By contrast, Sportradar US – the entity that offers the accused OTT product for sale and the signatory for many of the contracts referenced by Plaintiff (ECF No. 1, ¶¶ 29, 32) – and Sportradar Solutions – the entity that offers for sale the accused LCT product and will contract for sales of the accused emBET product – are both incorporated in Delaware.  McGarry Dec. ¶ 12, 21.  Sportradar US and Sportradar Solutions have operations in Minnesota, Nevada, and New York, and relevant witnesses, documents, and information are located in such locations – most of which are closer in proximity to Delaware. *Id.* ¶¶ 20, 26.  It

21

would be more or similarly convenient for such entities to produce documents and witnesses in Delaware as compared to this forum. *Id.*

The second factor – the availability of compulsory process to secure the attendance of witnesses – is likely to be neutral. This factor particularly focuses on the Court's ability to secure "non-party witnesses whose attendance may need to be secured by a court order." *Endo Pharms. Inc. v. Lupin Atlantis Holdings SA*, No. 2:17-CV-00558-JRG, 2018 WL 11474182, at *5 (E.D. Tex. May 30, 2018) (citing *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 316 (5th Cir. 2008)). Defendant is not currently aware of relevant non-party witnesses whose attendance would need to be secured by court order. All four of the inventors of the Asserted Patents appear to be employees of Plaintiff – and based on their LinkedIn profiles appear to be located in Chicago, New York, and Las Vegas, *not* Texas. Declaration of George G. Brell ("Brell Dec."), Exhibits A-D.

The third factor – the cost of attendance for willing witnesses – also weighs in favor of transfer. As noted, Defendant is not currently aware of any relevant non-party witnesses. And while the convenience of party witnesses is traditionally given less weight, attendance by Sportradar US employees located in Minneapolis or New York would be slightly more convenient in Delaware and the inventor/employees of Plaintiff appear to be either closer to or relatively equidistant from Delaware versus Texas. Brell Dec., Exs. A-D.

The fourth factor – other practical considerations – is neutral. Defendant is aware of the case *Sportscastr, Inc. (d/b/a PANDA Interactive) v. Genius Sports, Ltd.*, Case No. 2:23-cv-471, currently before this Court. And while that case involves three of the same patents, that case involves different accused products, and there is no commonality between Defendants or the technology accused. This Court has not yet developed any experience with the Accused Patents,

so the weight of this factor should be neutral.

As two of the four factors weigh in favor of Defendant and the other two are neutral, the private factors weigh in favor of transfer.

### B.    The Public Factors Weigh in Favor of Transfer.

The first factor - the administrative difficulties flowing from court congestion – weighs in favor of transfer.  Per the December 2023 Federal Court Management Statistics Report, there are 821 pending cases in the Eastern District of Texas per authorized judgeship versus 559 pending cases per authorized judgeship in the District of Delaware.  *See* Federal Court Management Statistics – Comparison Within Circuit (Dec. 31, 2023), *available at* https://www.uscourts.gov/file/78144/download.

The second factor – the local interest in having localized interests decided at home – weighs in favor of transfer.  Although patent infringement cases are not specifically localized, the previous discussion illustrates that Texas has no particular interest in the Accused Products and the Defendants have not specifically directed their actions towards Texas.  By contrast, Delaware is the incorporated home of both the Plaintiff and two of the relevant "Sportradar" subsidiaries, and thus has a greater interest.

The third and fourth factors – the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law – are neutral.  Both forums are conversant with patent law and Defendants doe not anticipate any conflict of law issues arising in this case.

Given the aggregate weight of the public factors and private factors in favor of Defendants, transfer under § 1404(a) is warranted.

**IX.** <u>**CONCLUSION**</u>.

For the foregoing reasons, Defendants respectfully submit that this Court should dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction, dismiss this case as it is not the first-filed case, or, in the alternative, transfer the case to the District of Delaware.

Date:   April 15, 2024                    Respectfully submitted,


                                          By:          /s/ David A. Roodman

                                          David A. Roodman, #38109MO
                                          daroodman@bclplaw.com
                                          George G. Brell #69850MO
                                          george.brell@bclplaw.com
                                          BRYAN CAVE LEIGHTON PAISNER LLP
                                          One Metropolitan Square
                                          211 N. Broadway, Suite 3600
                                          St. Louis, Missouri  63102
                                          Telephone (314) 259-2000

                                          Michael C. Smith
                                          State Bar No. 18650410
                                          Michael.Smith@solidcounsel.com
                                          SCHEEF & STONE
                                          113 East Austin Street
                                          Marshall, TX 75670
                                          Telephone (903) 938-8900

                                          ***ATTORNEYS FOR DEFENDANTS
                                          SPORTRADAR GROUP AG AND
                                          SPORTRADAR AG***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 15th day of April, 2024. Any other counsel of record will be served by facsimile transmission and/or first class mail.

        /s/ David A. Roodman